THE INSURANCE COMPANY OF NORTH AMERICA

*v.*

HELEN N. GARLAND.

*Filed at Ottawa June 16, 1883.\**

1. INSURANCE—*waiver of condition upon notice of breach in condition.* A policy of insurance upon a dwelling house against loss by fire contained a condition that "if the assured shall allow the building herein insured to become vacant or unoccupied, and *so remain,* \* \* \* unless the consent of this company be indorsed hereon, this policy shall become void." The assured transferred the property and left the premises unoccupied. On application of the assignee the company indorsed its consent to the transfer of the policy, "subject, nevertheless, to all the terms and conditions" therein mentioned. It was shown that before such indorsement was made the agent of the company had notice that the building was then vacant and unoccupied, but there was no proof of an express consent that the house might remain unoccupied. It did so remain about twenty months, when it was destroyed by fire: *Held,* that the company was not liable on the policy for the loss.

2. SAME—*effect of breach of condition by allowing the property to become unoccupied.* A policy of insurance having such a condition does not become absolutely void by reason of the premises becoming vacant or unoccupied. Nor is the insurance company, in case of the breach of such a condition, bound, at its peril, upon notice of such breach, to declare the policy forfeited for that reason, even if it had such power. But if it does not exer-

---

\* Per CURIAM:—A rehearing having been granted in this case we have again carefully examined it, and find no reason to change the conclusion reached on the former hearing. The opinion heretofore filed in the cause is approved and re-adopted as expressive of our views on the subject.—*Filed at Ottawa January 23, 1884.*

cise this power while the assured is in default, and the premises are again occupied, its right to do so ceases, and its liability on the policy again attaches.

3. SAME—*effect of consent to transfer of policy.* The effect of a consent to a transfer of a policy of insurance by the company, subject "to all the terms and conditions therein mentioned," is nothing more than to place the assignee in the same position with respect to all rights and liabilities under it that the assured occupied before the transfer. It amounts only to a substitution of the assignee as a party to the policy for the assured. In other words, it is the same as a re-issue of the policy to another party upon precisely the same terms and conditions as in the original.

4. SAME—*condition in policy construed.* Under a condition in a policy of insurance that "if the assured shall allow the building" insured "to become vacant and unoccupied, and so remain," etc., the policy shall become void, it is not sufficient, to avoid the policy, that the assured shall allow the premises to become vacant or unoccupied, but he must allow them to *"remain so."* Under such a provision, if the premises are suddenly vacated the assured is bound to procure, without unreasonable delay, another tenant or occupant. If he does not, the company would have the right to declare the policy forfeited altogether, but it is not bound to do so in order to avail itself of such condition.

5. SAME—*construction of words in notice.* Where an agent of a purchaser of insured premises applied to the agent of the insurance company to procure its consent to a transfer of the policy, and informed the latter that the premises were vacant, and such agent of the company informed him that he would have to produce the policy, and at the time of the transfer told him that "if the house was vacant he had better attend to that part of the business, because it would not amount to anything if the house was destroyed:" *Held,* that the expression, *"that part* of the business," had no reference to the transfer of the policy, but to the vacancy of the premises.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

Messrs. MILLER, LEWIS & BERGEN, for the appellant:

Before a company can be said to have waived a condition in its policy by recognizing its obligation after the condition has been violated, it must appear that this recognition was made upon full knowledge of the fact that the condition has been violated. *Allen, Safford & Co.* v. *Vermont Mutual Fire Ins. Co.* 12 Vt. 336; Wood on Insurance, sec. 496; *Finley* v.

*Lycoming Ins. Co.* 30 Pa. St. 313; *Mershon* v. *National Ins. Co.* 34 Iowa, 87; *Phœnix Ins. Co.* v. *Stevenson,* 78 Ky. 156.

A waiver can not be implied unless the language or act of the insurer is such as fairly leaves the assured to understand that nothing further is required to be done by him. Wood on Insurance, sec. 496, p. 834.

Where the assignee of a policy, who had purchased the property insured, called upon the agent and informed him of that fact, and the agent told him to bring the policy and he would indorse consent to the transfer thereon, which the plaintiff failed to do, it was held that there was no waiver, because what the agent said was merely confirmatory of the condition, and required the assignee to do precisely what the policy required. *Equitable Ins. Co.* v. *Cooper,* 60 Ill. 507.

Mr. J. Blackburn Jones, for the appellee:

Although the condition, by its terms, provides that the policy shall be "void" on a breach thereof, its legal effect is simply to render it voidable at the election of the insurers. If they do not elect to avoid it, neither the insured nor third parties could treat it as void, and the insurers could waive the forfeiture and continue the policy in force. *New England Fire and Marine Ins. Co.* v. *Schettler,* 38 Ill. 166; *David* v. *Hartford Ins. Co.* 13 Iowa, 69; *Keenan* v. *Missouri State Mutual Ins. Co.* 12 id. 126; *Bigler* v. *New York Central Ins. Co.* 22 N. Y. 402; *Atlantic Ins. Co.* v. *Goodall,* 35 N. H. 328; *Carpenter* v. *Prov. Wash. Ins. Co.* 16 Pet. 509; *Coursen* v. *Pennsylvania Ins. Co.* 46 Pa. St. 323; *Frost* v. *Saratoga Ins. Co.* 5 Denio, 154; *Clark* v. *Jones,* 1 id. 516; *Cartwright* v. *Gardener,* 5 Cush. 281; *Warner* v. *Peoria Ins. Co.* 14 Wis. 323; *Miner* v. *Phœnix Ins. Co.* 27 id. 699; *Commercial Ins. Co.* v. *Spankneble,* 52 Ill. 53; *Viele* v. *Germania Ins. Co.* 26 Iowa, 53; *Insurance Co.* v. *Stockbower,* 26 Pa. St. 199.

Waiver of a condition need not be in writing. *Viele* v. *Germania Ins. Co.* 26 Iowa, 53; 1 Greenleaf on Evidence,

secs. 302–304; 2 Phillips on Evidence, (Cowan, Hill & Edward's notes,) 692, note, 505; *Fleming* v. *Gilbert,* 3 Johns. 528; *Merrill* v. *Ithaca and Oswego R. R. Co.* 16 Wend. 586.

Any course of dealing whereby the assured was led to believe that the condition was dispensed with or forfeiture waived, will be sufficient to preclude the setting up of the breaches of the condition as a defence.   *Viele* v. *Germania Ins. Co.* 26 Iowa, 53; *North Berwick Co.* v. *Insurance Co.* 52 Maine, 336; *Franklin* v. *Atlantic Fire Ins. Co.* 42 id. 456; *Columbia Ins. Co.* v. *Cooper,* 50 Pa. St. 331; *Lycoming Ins. Co.* v. *Stockbower,* 26 id. 199; *Wing* v. *Harvey,* 27 Eng. L. & Eq. 140; *Frost* v. *Saratoga Mutual Ins. Co.* 5 Denio, 154; *Ames* v. *New York Union Ins. Co.* 26 N. Y. 263; *Liddle* v. *Market Fire Ins. Co.* 28 id. 184; *New York Ins. Co.* v. *National Protection Ins. Co.* 20 Barb. 468; *Bœhen* v. *Williamsburg Ins. Co.* 35 N. Y. 131; *Goit* v. *National Protection Ins. Co.* 25 Barb. 189; *Commercial Ins. Co.* v. *Spankneble,* 52 Ill. 53.

Mr. Justice Mulkey delivered the opinion of the Court:

This is an appeal from a judgment of the Appellate Court affirming a decree of the circuit court of Cook county, in favor of Helen L. Garland, the appellee, and against the Insurance Company of North America, the appellant, for the sum of $3000, the amount of a loss by fire, under a policy of insurance issued by the company to Maria G. McConnell on her dwelling house, on the 23d day of November, 1876, and by her assigned, with the consent of the company, to appellee, less the sum of $1746, the amount of a certain mortgage upon the insured premises, then held by the company.

After the issuing of the policy, and but a few days before the 23d of January, 1878, Mrs. McConnell, the assured, sold and conveyed the premises to Mrs. Garland, the appellee, and thereupon moved out, leaving them vacant and unoccu-

pied, in which condition they so remained until the time of their destruction by fire, on the 25th of September, 1879, being a period of some twenty months. The policy, among others, contained this provision: "And if the assured shall allow the building herein insured to become vacant or un- occupied, and so remain,  *  *  *  unless the consent of this company be indorsed hereon, this policy shall become void." On the 23d of January, 1878, and but a short time after the sale and transfer of the property to appellee, her husband, John C. Garland, called at the company's office for the purpose of obtaining the company's assent to the transfer of the policy, which, after some little delay, by reason of the policy not being present, was indorsed thereon in these words:

"The property hereby insured having been purchased by Helen L. Garland, the Insurance Company of North America consents that the interest of Maria G. McConnell in the within policy may be assigned to said purchaser, subject, neverthe- less, to all the terms and conditions therein mentioned and referred to.

C. H. CASE, Agent."

Garland's account of what occurred at the company's office is as follows: "After the purchase of this property from McConnell, and after the McConnells had moved out of the house, I called at the office of Mr. Case, agent of this com- pany, whose name is signed to the policy, at No. 120 La Salle street, to have the insurance transferred from Mrs. McConnell to Mrs. Garland, and the clerk at the desk said that I would be obliged to bring the policy before the insurance could be transferred on their books. I remarked to the clerk that it was late in the afternoon, and I had just got knowledge that the house was vacant, and desired to have the transfer made. The clerk remarked that they could put it on their book,— put the transfer on their books,—but it would not be legal without I had the policy with Mrs. McConnell's signature attached, and if the house was vacant I had better attend

to that part of the business, because it would not amount to anything if the house was destroyed,—they would not be liable for any loss. I then went out to find McConnell, and found him. Got his wife's signature to the assignment on the back of the policy. It was signed by Mr. McConnell, who said he was his wife's agent. I then took the policy back to Mr. Case's office, and they wrote on it their transfer. The policy was then taken back in where Mr. Case was sitting, and signed by him, and brought and handed to me." In answer to the question, "Now state again precisely what you said, if anything, with reference to the property being vacant?" he further said: "I told this clerk that I wanted the transfer put on the books that day, because the property was vacant, and it had just come to my knowledge that the McConnells had moved out of it and moved into the city."

Upon this state of facts it is claimed by appellee that the company having assented to the transfer of the policy in the manner stated, with notice that the insured premises were at the time of such transfer vacant and unoccupied, was in law a waiver of the condition which declares the policy void upon the happening of such contingency,—and so the Appellate Court held. We do not think the evidence, or a proper construction of that clause of the policy, warrants the conclusion reached. We see nothing in Garland's statement of what occurred at the company's office that would justify the inference that the company intended a waiver of that condition in the policy. There was certainly nothing said by any one present to warrant that conclusion,—so that if the position can be maintained at all, it must be solely on the ground that the consent of the company, having notice of the fact the property was at the time unoccupied, is of itself, in law, a waiver of the condition. We are aware of no authority sustaining this view, and certainly none has been cited going that length. We do not understand that a policy having a condition in it like the one under consideration becomes ab-

15—108 ILL.

solutely void by reason of the premises becoming vacant or unoccupied. Nor do we understand that in case of a breach of the condition of the policy in this respect the company is bound, at its peril, upon notice of such breach, to declare the policy forfeited for that reason, even conceding it has the power to do so, of which it is unnecessary now to express any opinion. And it is well settled if the company should not exercise this power while the assured is in default, and the premises should again become occupied, its right to do so would cease, and its liability on the policy would again attach. *Schmidt* v. *Peoria Marine and Fire Ins. Co.* 41 Ill. 295; *Insurance Company of North America* v. *McDowell,* 50 id. 120; *Westchester Fire Ins. Co.* v. *Foster,* 90 id. 121.

Now, the object of the company in assenting to the transfer of the interest of the assured in the policy to the purchaser was clearly nothing more than to place the latter in the same position, with respect to all rights and liabilities under it, that the assured herself occupied before such transfer. Suppose Mrs. McConnell had simply vacated the property without selling it or assigning the policy, and it had remained vacant until the loss by fire in the same way it did, and this action had been brought by her instead of Mrs. Garland, and the company had invoked the breach of this condition in the policy as a defence, would it have been any answer to have replied the company knew the premises were vacant and unoccupied, and had declared no forfeiture of the policy? Surely not. And yet, on principle, we can see no difference in this case and the one supposed, if, as we have already seen, the transfer of the policy with the company's consent is a mere substitution of appellee as a party to the policy for Mrs. McConnell. Upon such change of parties, her relation to the policy, the company, and the subject matter of the contract, became precisely the same as that of Mrs. McConnell before the substitution. It was, in effect, re-issuing the policy to another party upon the same terms and conditions it had

been issued before.   Suppose this had been an original policy,
issued to appellee in the first instance, under the same cir-
cumstances, how would the case stand?   To say the delivery
of. the policy under such circumstances would be a waiver of
the condition altogether, would be to not only disregard the
manifest intention of the contracting parties, but would be
clearly doing violence to an express provision of the contract
itself.   We have no doubt in such case the condition would
remain in full force to the same extent as other provisions
in the contract, and that in order to secure the benefits of
the policy the assured would be bound to see the premises
did not "*remain*" vacant or unoccupied.   In such a case we
have no doubt the company would have a clear right to insist
on the performance of the condition, and until that was done
its liability under the policy would not attach.   On the other
hand, whenever the terms of the policy in this respect were
complied with, the company's liability would at once begin.

The case in hand does not, in our opinion, differ in prin-
ciple from the one supposed.   The precise language of the
policy affecting this question should be particularly noted.
The condition is not that the policy shall become null and
void if the assured shall allow the building to become vacant
or unoccupied.   That is not sufficient.   By the very terms
of the policy the assured must go a step further.   She must
not only allow the building to become vacant or unoccupied,
but, in the language of the policy, she must also allow it to
"*remain so.*"   It is clear that under a provision of this kind,
if the premises were to be suddenly vacated the assured
would be bound to procure without delay another tenant or
occupant, for until that was done his or her rights under the
policy would be suspended, though the policy for that reason
would not become void.   On the contrary, as soon as the
premises were re-occupied the company's liability would again
attach.   It may be, for any unreasonable delay by the assured
in re-occupying the property the company would have the

right to declare the policy forfeited altogether, but it is not bound to do so in order to avail itself of this condition. In the present case there was a wanton disregard of the condition in question altogether, and we think justice to the company demands that its rights under the policy should not be sacrificed by a lax or latitudinous construction, which would do violence to the very terms of the company's consent to the transfer. By those terms it agreed that Mrs. McConnell's interest in the policy might be assigned to appellee, "*subject, nevertheless, to all the terms and conditions therein mentioned and referred to.*" And yet we are asked to hold, in the face of this express stipulation to the contrary, that the company thereby waived this condition in the policy. We can not give our assent to any such construction.

So far as this case may be supposed to depend upon whether the company had notice of the fact the premises were vacant and unoccupied at the time of the transfer, the evidence is by no means satisfactory or conclusive, yet in the view we take of the question it is not important to discuss the evidence relating to it. Conceding it to be sufficiently established, it distinctly appears, as we understand the testimony, the company, at the very time of receiving such notice, informed the appellee's husband, who was then acting as her agent, that the company would not be liable for any loss so long as the premises remained vacant and unoccupied. Garland himself swears he was informed, at the time of the transfer, that if the house was vacant he "had better attend to that part of the business, because it would not amount to anything if the house was destroyed,—they would not be liable for any loss."

It is claimed, however, the expression, "*that part of the business,*" has reference to the transfer of the policy. But that would certainly, in the connection in which it occurs, be a very forced construction. We think the plain common sense of the thing requires this expression to be referred to

the vacancy of the premises, and not the assignment of the policy.   There was no occasion to admonish Garland to quicken his steps in getting the policy assigned.   He was already there, in the company's office, for that purpose, and doing all that one reasonably could do to accomplish that object.   But not so with respect to the property being occu-, pied.   That was liable to be overlooked, and some time would necessarily be required in procuring an occupant, hence the admonition.

The judgment of the Appellate Court is reversed, and the cause remanded, with directions to reverse the decree of the circuit court, and remand the cause to that court for further proceedings in conformity with the views here expressed.

*Judgment reversed.*

Mr. JUSTICE CRAIG, dissenting:

I do not concur with a majority of the court in the decision of this case, and I have concluded to give my reasons for dissenting.

On the 23d day of November, 1876, the Insurance Company of North America issued to Maria G. McConnell a policy of insurance on her dwelling house in Winnetka, for $3000, to be in force from its date until February 18, 1880. On the 25th day of September, 1879, the building was burned. The only question involved in this record is, whether the policy was in force at the time the building was destroyed.

The policy contained a provision that if the property was sold to a third party the policy might be assigned to the purchaser, with the written consent of the company.   The property was sold to Helen L. Garland, and the company, by C. H. Case, its agent, on the 23d day of January, 1878, agreed to the assignment, in writing, which was indorsed on the policy, as follows: "The property hereby insured having been purchased by Helen L. Garland, the Insurance Company of North America consents that the interest of Maria

G. McConnell in the within policy may be assigned to said purchaser, subject, nevertheless, to all the terms and conditions therein mentioned and referred to."

The policy contained this provision: "If, during the continuance of this insurance, the risk shall be increased, by any means whatever, with the knowledge of the assured, and the assured shall neglect to notify the company thereof, * * * and if the assured shall allow the building herein insured to become vacant or unoccupied, and so remain, * * * in each and every such case, unless the consent of this company be indorsed hereon, this policy shall be null and void."

It appears, from the evidence, that a short time before the assignment of the policy, the McConnells, who had been occupying the property, moved out and left the house vacant, and it remained vacant until it was destroyed by fire. On behalf of the company it is claimed, that as the property became vacant and unoccupied, and so remained until it was destroyed, it is not liable for the loss; while on the other hand it is claimed, that the company was notified on the 23d day of January, 1878, (before the policy was assigned,) that the property was vacant, and that after receiving such notice the company assented to the assignment of the policy, and that such assent was in effect a re-insurance of the house as vacant property, and hence the policy was in force at the time the property was destroyed.

Whether the company had notice of the fact that the house was vacant when it assented to the assignment of the policy, is a question of fact upon which the evidence is not entirely harmonious. Upon this point John C. Garland in substance testified: "I know that the Insurance Company of North America, complainant in this case, had notice that the house was vacant before it burned. After the purchase of this property from McConnell, and after the McConnells had moved out of the house, I called at the office of Mr. Case, agent of

this company, whose name is signed to the policy, at No. 120 La Salle street, to have the insurance transferred from Mrs. McConnell to Mrs. Garland, and the clerk at the desk said that I would be obliged to bring the policy before the insurance could be transferred on their books. I remarked to the clerk that it was late in the afternoon, and I had just got knowledge that the house was vacant, and desired to have the transfer made. The clerk remarked that they could put it on their book,—put the transfer on their books,—but it would not be legal without I had the policy with Mrs. McConnell's signature attached, and if the house was vacant I had better attend to that part of the business, because it would not amount to anything if the house was destroyed,—they would not be liable for any loss. I then went out to find McConnell, and found him. Got his wife's signature to the assignment on the back of the policy. It was signed by Mr. McConnell, who said he was his wife's agent. I then took the policy back to Mr. Case's office, and they wrote on it their transfer. The policy was then taken back in where Mr. Case was sitting, and signed by him, and brought and handed to me." In answer to a further question he said, before the indorsement was made by Mr. Case he told the clerk that he wanted the transfer put on the books that day because the property was vacant, and it had just come to his knowledge that the McConnells had moved out of it and moved into the city. At the time of this occurrence three men were at work in the office of the company,—Case, the agent, Graves, a book-keeper, and Robinson, a clerk in the office; but these men have no recollection whatever of the transaction. Case says he had no notice that the building was vacant. Graves does not remember that Garland ever called at the office. Robinson wrote the indorsement on the policy, which was signed by Case, and he says nothing was said at the time about the building being vacant, that he remembers. But this negative evidence can not overcome the clear and

concise statement of the witness Garland, who seems to be positive in regard to what was said and done, and if his evidence is true, (and so far as appears from anything in the record there is nothing to overcome or impeach it,) the company, at the time it assented to the assignment of the policy, had notice that the building was vacant.

If, then, the company had notice that the building was vacant at the time it consented to the assignment of the policy, what construction is to be placed upon the contract of insurance after the assignment, existing between the company and the assignee, Helen L. Garland?

In *Fogg* v. *Middlesex Mutual Fire Ins. Co.* 10 Cush. 337, the effect of an assent to an assignment by an insurance company is stated by the court in the following language: "As a policy of insurance is not a negotiable instrument, it can not be legally transferred so as to enable the assignee to maintain a suit in his own name without the assent of the other party. But in general, at the common law, where one party assigns all his right and interest in the contract, and the assignee gives notice to the other party to the contract, and he agrees to it, this constitutes a new contract between one of the original parties and the assignee of the other, the terms of which are regulated and fixed by those of the original contract."

In *Wilson* v. *Hill*, 3 Met. 66, a like question arose, and the court said: "If the assured has wholly parted with his interest before they (the buildings insured) are burnt, and they are afterwards burnt, the underwriter incurs no obligation to pay anybody. The contract was to indemnify the assured, and if he has sustained no damage the contract is not broken. If, indeed, on a transfer of the estate, the vendor assigns his policy to the purchaser, and this is made known to the insurer, and is assented to by him, it constitutes a new and original promise to the assignee to indemnify him in like manner whilst he retains an interest in the estate; and the

exemption of the insurer from further liability to the vendor, and the premium paid for insurance for a term not yet expired, are a good consideration for such promise, and constitute a new and valid contract between the insurer and the assignee."

If the doctrine of these cases is sound, which I believe it to be, the written assent of the insurance company to the assignment of the policy created a new contract of insurance between the company and the assignee of the policy,—Helen L. Garland. In legal effect the contract of insurance was the same as if Mrs. Garland had surrendered the old policy, and the company had issued to her, and in her name, a new one for the unexpired term the old policy had to run.

If I am correct in this view, the only remaining question to be determined is, whether an insurance company which issues a policy on vacant property, knowing the fact that the property is vacant, can, in case of loss, defeat a recovery on the policy on the ground that the policy contains a provision that it shall be void in case the property becomes vacant during the term for which the property is insured.

A similar question arose on a policy of insurance in *Commercial Ins. Co.* v. *Spankneble*, 52 Ill. 60, and in that case it is said: "As to the objection that the premises were unoccupied when the fire occurred, it is a sufficient answer to say that the brewery was in the same condition when the fire occurred that it was when the policy was issued, and the agent of the company was informed of its condition when he issued the policy. The company took the premium knowing the condition of the premises, and their condition being the same when destroyed by the fire, they should not be permitted to escape liability on that ground. The premises were no more vacant or unoccupied at the time of the fire than when the insurance was effected." See, also, *Williamsburg City Fire Ins. Co.* v. *Cary*, 83 Ill. 454, where a similar doctrine is announced.

In *Georgia Home Ins. Co.* v. *Kinnet, Admx.* 28 Gratt. 88, the policy upon which the action was brought contained a clause that it should be vitiated if the premises became vacant, and the court, in deciding the question, held: "If, at the time the agent of the company received the premium of insurance and delivered the policy, he had knowledge of the vacation of the property, and did not then avoid the policy, but treated it as valid and subsisting, such conduct of the agent was a waiver of the condition, and a breach of it could not be relied on by the defendant to defeat the plaintiff's recovery."

In *Williams* v. *Niagara Fire Ins. Co.* 50 Iowa, 561, the policy contained a similar condition, and it is there said: "The company, with full knowledge that the house was unoccupied, and would be for a time, issues the policy and receives the premium, and then, after a loss occurs, insists that it is not bound, and the policy never had a legal existence, because said house was vacant. Having issued the policy, taken the premium, and thereby induced the plaintiff to believe she was insured, the defendant is estopped from alleging or proving the policy never had a legal existence. By issuing the policy the defendant waived the conditions as to the occupation of the building."

In *Aurora Fire Ins. Co.* v. *Kranich*, 36 Mich. 289, it was held that a condition similar to the one under consideration had no application to a case where buildings insured were vacant at the time the policy issued.

The Supreme Court of Maine, in *North Berwick County* v. *New England Fire and Marine Ins. Co.* 52 Maine, 336, hold that a renewal of a policy, with knowledge of the existence of facts which would authorize the insurer to declare a forfeiture, would be regarded a waiver.

But it is unnecessary to multiply authorities on the question, as we regard it well settled by authority that the insurer can not invoke the aid of a proviso like the one in question

to defeat a recovery, where the policy was issued with knowledge at the time that the property was vacant.   When the insurance company was notified by Garland that the house was vacant, if it did not desire or intend to be bound as an insurer of vacant property it had the right, and good faith required, that it should refuse to consent to the assignment, and thus the contract of insurance might have terminated; but it did not pursue this course, but chose to consent to the assignment of the policy, and thus entered into a new contract of insurance with the assignee.   Having done this with knowledge that the property was vacant, justice and fair dealing will not now permit the company to escape liability by claiming that the contract made by it was, at the time, worthless and void.

It is claimed by appellant that appellee did not, in her answer or cross-bill, rely upon the point that the assent of the company to the assignment of the policy was a waiver of the condition against vacancy, and hence "the case made by the decree is not the case made by the answer and cross-bill." It is set up, both in the answer and the cross-bill, that the building was vacant, and that the company had full knowledge that it was vacant, and this is relied upon as a waiver by the company of the right to insist upon the proviso named in the policy.   It may be, and perhaps is, true, that the ground upon which appellee relied to recover on the policy might have been more accurately stated; still, it was substantially stated, both in the answer to the bill and also in the cross-bill, and that was all that could be required.

In conclusion, after a careful consideration of the case I am well satisfied that the judgment of the Appellate Court was correct, and in my judgment it ought to be affirmed.