CLIFTON E. DOLLIVER

*vs.*

GRANITE STATE FIRE INSURANCE COMPANY.

Hancock. Opinion December 10, 1913.

*Assent in writing. Conditions. Insurance. Policies. Vacancy.*

1. Contracts of insurance are contracts of indemnity upon terms and conditions specified in the policy embodying the agreement of the parties and if it appears that the insured has violated or failed to perform any of the conditions of the contract, and such violation or want of performance has not been approved by the insurer, the assured cannot recover.

2. If the plaintiff permitted the insured premises to become vacant by the removal of the occupants and to remain vacant for more than thirty days without the assent of the company in writing, or in print, he violated a condition of the policy and cannot recover.

3. The subsequent reoccupation of the premises by workmen of the assured did not revivify the policy, nor restore the plaintiff to his former rights, as no act of the plaintiff alone could have that legal effect.

On report. Judgment for defendant.

This is an action on two fire insurance policies, both issued by the defendant corporation, one dated December 8, 1909, for the term of three years and to expire December 8, 1912, on a certain one and one-half story frame dwelling house and additions thereto, including foundations, gas and water pipes and stationery heating apparatus therein, situate on the east side of Oak Point Road in Trenton, Maine. The other policy is dated December 13, 1911, and expires December 13, 1914, on a certain frame barn situate on the east side of Goose Cove Road in Trenton, Maine, and a certain frame carriage house belonging thereto. The buildings described in said policies were totally destroyed by fire on the 28th day of July, 1912.

The defendant plead the general issue and filed a brief statement in substance that at the time of the issuance of said policies, the plaintiff was not the sole owner of the described property; that said policies were void, because without the consent of defendant company in writing, or print, the premises became vacant and remained vacant for more than thirty days prior to the time they were destroyed by fire. At the conclusion of the evidence, the cases were reported to the Law Court for their determinatioon, upon so much of the evidence as is legally admissible.

The case is stated in the opinion.

*Edward S. Clark,* for plaintiff.

*John E. Nelson,* for defendant.

SITTING: SAVAGE, C. J., SPEAR, CORNISH, KING, BIRD, PHILBROOK, JJ.

CORNISH, J. Several questions are raised in defense to this action on two fire insurance policies, but it is necessary for this court to consider only one, namely, the legal effect of the breach of contract as to occupancy.

The policies were dated respectively December 8, 1909, and December 13, 1911, were issued for a term of three years, and covered farm buildings in the town of Trenton. When the first policy was issued the plaintiff was living with his family upon the premises and making his home there. In June, 1910, he moved with his family to Bar Harbor and has since resided in that town but he claims to have kept workmen as tenants in the insured premises until

about January 1, 1912, and we think the evidence fairly supports this contention. The buildings therefore were occupied when the policies were issued.

On January 1, 1912, the premises being then unoccupied, the plaintiff secured thirty-day vacancy permits from the defendant's agent, which expired January 31, 1912. But the premises remained unoccupied until June 18, 1912, when other workmen for the plaintiff entered into possession and continued to occupy the buildings until July 28, 1912, when the fire occurred.

The policies were of the Maine Standard form adopted by the Legislature in 1895, and each contained the usual provision: "this policy shall be void . . . if the premises hereby insured shall become vacant by the removal of the owner or occupant, and so remain vacant for more than thirty days without such assent," such assent having been previously defined as "in writing or in print of the Company." It being conceded that the written assent to vacancy issued on January 1, 1912, expired on January 31, 1912, and that no other permit was given, it follows that by their own terms the policies were rendered void, because of the subsequent vacancy extending to June 18, 1912, unless as claimed by the learned counsel for the plaintiff, the reoccupation begun on June 18, and continued till the time of the fire, of itself, revivified the contract and restored the plaintiff to his former rights. Did it have that legal effect?

This is a question raised sharply for the first time in this State and because of its consequences is deserving of the most careful consideration. Especially is this true because the decisions in other jurisdictions are not in harmony.

The policy contains eleven distinct conditions, the violation of any one of which, renders it void. One of these, false representation in the application, relates to matters antedating the policy; nine others, viz.: other insurance, removal, increase of risk, sale, vacancy for more than thirty days, manufacturing establishments running later than nine o'clock P. M., or ceasing operations more than thirty days; keeping of gunpowder or other like articles contrary to law; keeping of camphene, benzine, naptha or other chemical oils, all relate to matters while the policy is in force; while the eleventh, fraud, relates to acts either before or after the loss.

An examination of the authorities reveals the fact that in some states the courts have held that the breach of these conditions does not render the policy void but merely suspends its operation, and when the breach ceases, the policy again attaches. They make it a case of suspended animation rather than of death. But it would seem that in order to do this they ignore the plain words of the contract and seek to reach a conclusion which under the circumstances might seem fairer to the assured, working out what they conceive to be "substantial justice."

The reasons given for these decisions do not commend themselves to our judgment. In some cases the later decisions are based upon earlier ones arising under a different form of policy where the temporary suspension was expressly provided for, but the distinction is not noted, or if noted, the earlier is followed, notwithstanding the changed contract.

For instance, three early cases are often cited as authority for the doctrine of revivification, viz.: *Lounsbury* v. *Ins. Co.*, 8 Conn., 458, (1831); *Phoenix Ins. Co.* v. *Lawrence,* 4 Metc. (Ky.) 9, 81 Am. Dec., 521 (1862), and *U. S. F. & M. Ins. Co.* v. *Kimberley,* 34 Md., 224, 6 Am. Rep., 325 (1870) but in each of them the policy provided, not that it should be void in case the property were used contrary to the conditions specified, but that "so long as the same shall be so appropriated applied or used, these presents shall cease and be of no effect." It is obvious that under that plain language the policy was suspended by its own terms, but when that language was abandoned and it was provided that the policy should be "void," it is difficult to see how these early decisions form any precedent in favor of the doctrine of suspension. In fact they are authorities against it. Yet these decisions among others are cited as authorities in *Athens Mutual Ins. Co.* v. *Toney, Ga.,* 57 S. E., 1013, (1907), one of the more recent cases that adopts the theory of suspension and revivification.

Along the same line are the decisions in Illinois. The earliest case on this subject in that state, and the one often cited by that court as the leading case, is *New England F. & M. Ins. Co.* v. *Wetmore,* 32 Ill., 221, (1865).

But the policy in that case provided, as in the other early cases before referred to, that if the premises should be appropriated to any prohibited use then "so long as the same shall be so appropriated, applied, or used, these presents shall cease and be of no force or effect," and the court say: "The import of this language it seems to us, is most clear, not that this policy should be absolutely void to all intents and purposes, if the premises are misappropriated, but only while they are so improperly used, the insurance shall have no effect." With this construction we can have no quarrel because plain words are given their plain meaning.

But following this the Illinois court has extended the doctrine even to cases where the policy contains the word "void," as in *Germania Fire Ins. Co.* v. *Klewer,* 129 Ill., 599, 22 N. E., 489 (1889), and *Traders Ins. Co.* v. *Catlin,* 163 Ill., 256, 45 N. E., 255, (1896).

In *Germania Fire Ins. Co.* v. *Klewer,* supra, the court went so far as to hold that while the policy provided that it should be void in case of other insurance existing at the time the policy was taken out, the legal effect was, not to avoid the second policy, the one in suit, but to suspend it until the expiration of the prior policy and then it would come into full force.

Our court has squarely rejected such a doctrine in a case arising under the same clause, and presenting the same point; *Bigelow* v. *Ins. Co.,* 94 Maine, 39. The opinion concludes: "By the express terms of the policy in suit, the defendant company is absolved from all liability thereunder." To the same effect are *Jersey City Ins. Co.* v. *Nichol,* 35 N. J. Eq., 291 ; *Ins. Co.* v. *Rosenfield,* 95 Fed., 358, and *Carleton* v. *Ins. Co.,* 109 Maine, 79.

In *Traders Ins. Co.* v. *Catlin,* supra, the question arose over changes in the property that increased the hazard, and the court held that if the changed conditions had ceased to exist before the fire, leaving the risk no more hazardous than before, the policy again became in force. The court say: "If a loss occurs during the increased hazard, it would defeat a recovery. If a former increase of hazard has ceased to exist; and that increase of hazard at that former time in no way has affected the risk when the loss occurs, no reason exists why a forfeiture should result from a cause which occasions no damage."

This clearly shows the reasoning of the Illinois court. It is based upon increase of risk at the time of the fire and whether or not the

specific conditions have in the meantime been broken they hold to be of no consequence providing the situation has been restored. They applied the same rule by way of dictum in case of vacancy in *Insurance Co.* v. *Garland*, 108 Ill., 220, and it is the rule of the early case of *Ins. Co.* v. *Wetmore*, supra, applied to an entirely different policy.

This same idea of construing the policy, not according to its own plain terms but according to an arbitrary and unauthorized standard of increase of risk at the time of the loss, forms the basis of many of the decisions which hold to the doctrine of intermittent liability.

In *Athens Mutual Ins. Co.* v. *Toney, Ga.*, supra, after citing the early decisions before referred to and others including decisions from Illinois, the court say: "We place our decision squarely on the proposition that the violation of the condition as to vacancy in this case in no wise contributed to the loss. The increased hazard existed while the house was vacant, but when the house was reoccupied the danger from vacancy terminated, and the policy again attached and became of binding effect, and the company was liable for the loss." The same reason is given in *Born* v. *Insurance Co.*, 110 Iowa, 379; 80 Am. St. Rep., 300, (1900), when construing the clause against incumbrance, and in *Ins. Co.* v. *Pitts, Miss.*, 41 So. 5, 7 L. R. A., N. S., 627, (1906), when construing the clause as to vacancy.

Here again our own court has taken the directly opposite view and has rejected the doctrine that the effect of vacancy, under the present form of policy depends upon the increase of risk.

Prior to the enactment of the standard policy in this State in 1895, there was a general statutory provision (passed in 1861) of this tenor: "A change in the property insured or in its use or occupation, or a breach of any of the terms of the policy by the insured, do not affect the policy unless they materially increase the risk." R. S., 1883, ch. 49, sec. 20.

And under this statute it was held that the breach of the condition as to vacancy did not in the absence of fraud, affect the contract of insurance unless the risk was thereby materially increased. *Cannell* v. *Ins. Co.*, 59 Maine, 582; *Thayer* v. *Ins. Co.*, 70 Maine, 531. It is evident that in such cases reoccupancy would keep the policy valid.

But the enactment of the Standard form of policy repealed the general statute of 1861, supra, so that the question of increase of

risk no longer affects the condition as to vacancy, *Knowlton* v. *Ins. Co.,* 100 Maine, 481. The court made use of this emphatic language which is significant in the case at bar:

"In the light of experience it was practicable to specify ten conditions or changes in the situation of the property, each of which would render the policy void without opening to actual inquiry the question of the increase of the risk. The language of the standard policy is not to be construed to mean that an issue of fact is to be raised upon the question of increase of risk under each of the independent clauses in question. It would not be reasonable to suppose that the legislature contemplated a judicial inquiry under the clause relating to the keeping of gun-powder, or naptha, or under the clause respecting other insurance on the property, or the clause in regard to the sale of the property and the assignment of the policy without the assent of the company as there specified. With no greater or better reason can it be claimed that the question of increase of risk is open under the clause rendering the policy void for vacancy or non-occupancy. It is an independent and absolute stipulation that the policy shall be void if the premises become vacant, and remain so for more than thirty days as there specified. It is not qualified by any other clause in the policy."

It is unnecessary to further analyze or comment upon the decisions holding that the violation of the plain terms of the contract as to vacancy creates only a suspension of liability. Such a construction would seem to be a perversion of the clear and explicit terms of the contract, a creation rather than an interpretation.

In our opinion no better statement can be made of their lack of convincing power than that by Ostrander on Insurance, 2nd ed., sec. 145, viz.: "Regarding the purpose of this provision to be the protection of the insurer from such changes in the circumstances of the risk as would increase the hazard of fire, the courts have sometimes held that although the building becomes vacant and unoccupied during the term of the policy, if it was actually occupied when the fire occurred, the insurer would be held. These decisions appear to be based on the principle, which is not exactly cardinal in the law, that 'substantial justice' need be secured at all hazards. It must be admitted that if no harm comes to the risk during the period of its abandonment and if it is in the care of an occupant at the time

of the loss, no important interest of the insurer is prejudiced on account of the temporary vacancy, and in such case there is an apparent hardship to the honest claimant, if the insurer is excused from paying the loss. But may the courts properly interfere to prevent the execution of a contract, which the parties were competent to make and did make in the exercise of their natural and constitutional rights? The policy plainly enough provides that on the happening of a certain event it shall be void. The event occurred and the obligation of the Insurance Co. then terminated. Unless the court has the power to create for the parties a different contract than the one they created for themselves, it can do nothing to relieve the situation; and when the courts undertake to correct mistakes of persons by taking away their right to make contracts, the well meant effort, in the long run is likely to produce more evil than good."

Let us now turn to the line of authorities holding that the contract should be interpreted as meaning what its language clearly expresses, that a violation of its conditions works a forfeiture and not merely a temporary suspension. The Supreme Court of the United States in *Imperial Fire Ins. Co.* v. *Coos Co.*, 151 U. S., 452, had under consideration a clause rendering the policy void if "mechanics are employed in building, altering or repairing the premises," and in an exhaustive opinion held that the violation of this condition relieved the insurer from responsibility although the fire did not occur in consequence of the alterations or repairs. The reasons are stated as follows: "Contracts of insurance are contracts of indemnity upon the terms and conditions specified in the policy or policies, embodying the agreement of the parties. For a comparatively small consideration the insurer undertakes to guaranty the insurer against loss or damage, upon the terms and conditions agreed upon, and upon no other, and when called upon to pay, in case of loss, the insurer, therefore, may justly insist upon the fulfilment of these terms. If the insured cannot bring himself within the conditions of the policy, he is not entitled to recover for the loss. The terms of the policy constitute the measure of the insurer's liability, and in order to recover, the assured must show himself within those terms; and if it appears that the contract has been terminated by the violation on the part of the

assured, of its conditions, then there can be no right of recovery. The compliance of the assured with the terms of the contract is a condition precedent to the right of recovery. If the assured has violated, or failed to perform the conditions of the contract, and such violation or want of performance has not been waived by the insurer, then the assured cannot recover. It is immaterial to consider the reasons for the conditions or provisions on which the contract is made to terminate, or any other provision of the policy which has been accepted and agreed upon. It is enough that the parties have made certain terms conditions on which their contract shall continue or terminate. The courts may not make a contract for the parties. Their function and duty consist simply in enforcing and carrying out the one actually made."

In *Mead* v. *Ins. Co.,* 7 N. Y., 530, the same doctrine was held applicable to the prohibited use of camphene, which had ceased before the fire, and upon the point of revival the court say: "The only question in my mind is, whether the use of the prohibited article at one period of the time for which the policy should by its terms continue, will avoid the policy in a case where the loss occurred at a time subsequent to such use. For the purposes of this question, it should be treated the same as if the use of the camphene had been permanently discontinued before the occurrence of the fire which destroyed the property. A warranty in a contract of insurance is in the nature of a condition precedent. It is settled by numerous decisions, that if the warranty is violated, it avoids the policy, and that it is immaterial whether the breach affects the risk or is connected with the loss or not. It would seem, in theory, that it was equally immaterial whether the act or thing to which the warranty related continued up to the time of the loss, or had ceased or been discontinued before. The amount of it is, the defendants undertook to idemnify the plaintiff against damage or loss by fire, etc., upon condition that certain stipulations were observed and kept by and on behalf of the plaintiff and not otherwise. If the plaintiff failed to perform those stipulations, the defendants' liability to indemnify ceased; could the plaintiff revive at pleasure by fulfilling his agreement—in this case by removing the camphene? If he could in one instance he could, for aught I see, in any number of cases. I incline to the opinion that this could not be done in any case without the

consent of the defendants, and that the only safe rule, is to hold the contract of insurance at an end, the moment the warranty is broken, and that it can not be revived again without the consent of both parties, unless the insurer has by some act or line of conduct waived the breach or violation of the warranty."

In *Reynolds* v. *Ins. Co.,* 107 Md., 110, 68 At. 262, (1907) a violation of a, provision requiring an inventory to be taken within thirty days rendered the policy void even though one was taken within fourteen days after the expiration of the required time. "It may seem to be a hard rule," say the court, "to declare a policy forfeited for some act of omission or commission which in point of fact was not the cause of the fire, and actually did no injury to the insurer, but when parties enter into contracts which are not prohibited by law, and are declared by the courts to be reasonable regulations, upon what principle can a court revive a policy, which by its terms was null and void, simply because the insurer sustained no injury by reason of the insured's failure to do what is required of him? After this policy became null and void the insured could not by his act alone revive it so as to bind the insurer."

In *Bemis* v. *Ins. Co.,* 200 Pa., 340, 49 At., 769 (1901) a provision avoiding the policy in case of a change of title was held to be violated by giving a warranty deed, although a reconveyance was made · prior to the fire.

The earlier decisions in Massachusetts seem to favor the doctrine of suspension and revival on the ground of no increase of risk, but the later decisions have rather repudiated it and have taken the opposite view. In *Hinckley* v. *Ins. Co.,* 140 Mass., 38, the court held that the temporary use of a bowling alley and pool room without a license, did not render the policy void but merely inoperative for the time being.

In *Ring* v. *Assurance Co.,* 145 Mass., 426, the same doctrine was applied to the insurance of chattels, in a house described as "occupied all the year round," when it appeared that for several weeks the house had been unoccupied, but was occupied at the time of the fire. *Hinckley* v. *Ins. Co.,* supra was cited with approval, but it should be noted that the effect of the non-occupancy upon the insurance on the house itself was not involved.

In *Kyte* v. *Ins. Co.,* 149 Mass., 116, the increase of risk clause was under consideration, the insured having used the premises for

the illegal sale of intoxicating liquors during a substantial portion of the term of the policy, but afterwards, and before the fire, having obtained a license therefor.   The court below instructed the jury that if the use of the premises which increased the risk, was merely temporary and ceased before the fire, the plaintiff could recover. The Law Court reversed this ruling and held that the policy was not merely suspended but might be treated by the company as wholly void.   The court also took occasion to refer to *Hinckley* v. *Ins. Co.*, supra and to say that the court in that case should have rested its decision upon another ground, "leaving it an open question whether a departure from the terms of the provision of a policy, without an increase of risk, may be deemed merely to suspend and not absolutely to avoid the policy."   This rule that an increase of risk absolutely avoids the policy, even though it does not continue up to the time of the loss, applies in principle to a vacancy because under our decisions vacancy is presumptive proof of increase of risk, *White* v. *Ins. Co.*, 85 Maine, 97; *Jones* v. *Ins. Co.*, 90 Maine, 44.

Later Massachusetts decisions follow *Kyte* v. *Assurance Co.* rather than *Hinckley* v. *Ins. Co.*

In *Wainer* v. *Ins. Co.*, 153 Mass., 335, the vacancy clause was under discussion, the disputed question being whether the policy took effect on January 23, 1889, or on March 13, 1889, it being admitted that the premises were vacant up to April 1, 1889, and occupied from that time to the date of the fire May 12, 1889.   The court unequivocally held that if the policy had been in force from January 23, it was rendered void, notwithstanding reoccupancy, but also held that it took effect from March 13, and therefore the vacancy had not existed for the prohibited and fatal period of thirty days.

*Hill* v. *Assuance Co.*, 174 Mass., 542, involved the material alteration clause and the fact that the alterations were completed long before the fire was held to have no curative power.   "The fact that a breach of condition is past," say the court, "and did not contribute to the loss does not necessarily put an end to the right of the insurer to avoid the policy."   This case was cited with approval in *Stuart* v. *Insurance Co.*, 179 Mass., 434, where the temporary alienation of property was held to avoid the policy notwithstanding reconveyance.

It would seem that reoccupancy should have no greater power to rehabilitate the contract than reconveyance. The court in Massachusetts can therefore be considered as against the doctrine of temporary suspension in a case like the one at bar.

Without prolonging the discussion further it is sufficient to add that the following cases, all involving the question of vacancy and reoccupancy, hold that the policy is not revived: *Moore* v. *Ins. Co.,* 62 N. H., 240; *East Texas Ins. Co.* v. *Kempner,* 87 Tex., 229, 27 S. W., 122 (1894); *Hardiman* v. *Fire Assn. Pa.,* 61 At., 990 (1905); *Hoover* v. *Ins. Co.,* 93 Mo. App., 111, 69 S. W., 42 (1902); *German Ins. Co.* v. *Russell,* 65 Kan., 373, 69 Pac., 345 (1902). See also 19 cyc., p. 709.

These authorities, in our opinion rest on the correct principle. It is not a question whether the insurer has been injured by the breach of the contract but whether the contract itself has in fact been broken. It either has or has not been. If not, the rights of the parties remain unchanged. If it has, then by its own terms the contract is rendered "void." And this word "void" being neither ambiguous, nor technical, should be "construed according to the common meaning of the language," R. S., ch. 1, sec. 6, Par. I. It means null, of no effect. The Legislature has seen fit to prescribe this as the form to be used. If a change is desirable or expedient that change should come by way of legislative amendment rather than by judicial wrenching. The insurer has the right to insist that the conditions surrounding and affecting the property shall continue and remain the same as at the date of insurance. If "void" means "temporarily suspended" then under a policy running three years, the premises might become vacant on the next day after its issuance, remain vacant for nearly the entire term, without the assent of the company, but if reoccupied on the day before the fire, the indemnity would again spring into existence. The contract prescribed by the Legislature clearly forbids any such intermittent rights, and liabilities.

We are, of course, not to be understood as holding that the insurer cannot waive this provision of the policy. It is well settled that he can so waive it, but that question needs no discussion here as there are no sufficient facts to warrant it.

The entry must be,

*Judgment for defendant.*