# PHENIX INSURANCE COMPANY
## v.
## ROBERT F. JOHNSTON.

*Fire Insurance — Policy—Conditions—Additional Insurance without Consent—Estoppel—Acts of Agents—Agency.*

1. Where a second policy of insurance is taken out upon given property, it does not absolutely void a previous policy containing the clause—"if the assured shall have or hereafter accept any other insurance on the above mentioned property, whether valid or not * * * without consent indorsed hereon, * * * then, in each and every one of the above cases this policy shall be null and void;" such clause means that no recovery can be had on such first policy without a waiver, and while such policy is in a state of violation through the life of such second policy, the cancellation of the second policy will in such case revive the first.

2. The assurance of an agent that insured may rely upon the consent of the company for additional assurance, amounts to a waiver of a clause requiring consent, he being its agent in respect thereto.

3. In an action upon a fire insurance policy, the defense being breach of a condition in procuring other insurance without consent, the plaintiff contending that such act was waived by the defendant, this court declines, in view of the evidence, to interfere with the judgment for the plaintiff.

4. When a policy holder applies to an insurer, seeking a certain privilege, he is bound to make his selection and give notice of it to the insured, otherwise the latter may assume the permission is granted.

[Opinion filed December 7, 1891.]

APPEAL from the Circuit Court of Peoria County; the Hon. T. M. SHAW, Judge, presiding.

This was a suit on an insurance policy against fire, on the farm dwelling of appellee, and his furniture and other property. Insurance as follows: dwelling $4,000, valued at $6,000; household furniture $1,500, valued at $4,000; piano and music $500, valued at $1,000; barn $1,500, valued at $2,000; hay in barn $400, and grain in granaries at $400—total $8,300. Policy dated December 28, 1887, and run for five years. The insurance was for a premium in gross of $134. The house was stated in the application to be worth $6,000. On the 31st

of March, 1890, it was destroyed by fire with most of its contents. Notice of the loss was given through Roswell Bills & Co., of Peoria, on one of the blanks furnished them in connection with their business as mercantile insurance agents of the company. The cause was tried before the court and jury and resulted in a verdict for appellee for the sum of $5,752.53, upon which judgment was rendered and this appeal taken. The defense in the case rested upon an alleged violation of certain provisions of the insurance policy without the consent of the appellant indorsed on the policy, in regard to the taking out of additional insurance by appellee, which is claimed rendered the policy void and released appellant from liability under the provisions of the policy, in case of destruction of the insured property by fire.

The appellee claims that appellant is estopped to insist on such forfeiture on account of certain acts of its agent in Chicago, which will be mentioned in course of the opinion. Appropriate pleas and replications were filed to raise the issues tried. The provisions of the insurance policy taken out by appellee, upon which the appellant's defense is supposed to rest, are as follows, viz.: * * * " If the assured shall have or hereafter accept, any other insurance on the above mentioned property, whether valid or not, * * * * without consent indorsed hereon, * * * then, in each and every one of the above cases, this policy shall be null and void;" and again, " No agent or employe of this company or any other person or persons have power or authority to waive or alter any of the terms or conditions of this policy, except only the general agent at Chicago, Illinois, and any waiver or alteration by him must be in writing."

The appellee on or about July 30, 1889, took out an additional insurance of $2,000 on the same dwelling insured by the above policy, given by appellant, in the Hartford Insurance Company. The above facts appeared before the jury and are not disputed.

Messrs. Stevens & Horton, for appellant.

Where a policy provides that a waiver of conditions con-

tained in it can only be made by indorsement or agreement on the policy, the local agent of the insurance company can not waive the conditions of the policy except in the manner provided. Enos v. Sun Ins. Co. (Cal.), 8 Pac. Rep. 379; Havens v. Home Ins. Co. (Ind.), 12 N. E. Rep. 137; Kyte v. Conn. Un. Ins. Co. (Mass.), 10 N. E. Rep. 518; Hale v. Mechanics Mutual Fire Ins. Co., 6 Gray, 169; Worcester v. Hartford Fire Ins. Co., 11 Cush. 265; Cleever v. Traders Ins. Co. (Mich.), 39 N. W. Rep. 571; Hankins v. Rockford Ins. Co. (Wis.), 35 N. W. 34; Bank v. Ins. Co. (Tenn.), 1 S. W. Rep. 689; Johnson v. American Fire Ins. Co. (Minn.), 43 N. W. Rep. 59; Robinson v. Fire Ins. Co. of Phil. (Mich.), 29 N. W. Rep. 521; Bonneville v. Western Assur. Co. (Wis.), 32 N. W. Rep. 34; American Ins. Co. v. Replogel (Ind.), 15 N. E. Rep. 810.

Where other insurance is obtained in violation of the terms of the policy, there can be no recovery in case of loss. Continental Ins. Co. v. Hullman, 92 Ill. 145; Illinois Mutual Fire Ins. Co. v. Fix, 53 Ill. 151; Germania Fire Ins. Co. v. Klewer, 129 Ill. 600; Zimmerman v. Home Ins. Co. (Ia), 42 N. W. Rep. 462.

Messrs. GEORGE B. FOSTER and JACK & TICHENOR, for appellee.

The policy contains the usual provision that in case other insurance is taken out on the property insured, "this policy shall be null and void." It is the usual provision in all policies.

" The term *void*, as used in the policy, is to be regarded as meaning that the insurer may, at his exclusive option, treat it so, and not that the contract becomes an absolute nullity as to either party. The insurer may, therefore, by his conduct, waive his right of forfeiture and estop himself from insisting upon it." Baer v. Phenix Ins. Co., 4 Bush. 242; Phenix Ins. Co. v. Spier, 87 Ky. 285; Veile v. Germania Ins. Co., 26 Ia. 9, 57.

This, we believe, is the general doctrine of all the States. If absolutely void and of no effect from the mere fact of taking additional insurance, then, nothing short of a new consideration could revive it, and there could be no waiver. Our courts hold that taking out additional insurance against the provisions of the policy, will not create a forfeiture unless

such other insurance remained in force up to the time of the fire. It does not, therefore, *ipso facto*, render the policy void. N. E. Fire & M. Ins. Co. v. Schettler, 38 Ill. 166; Western Assurance Co. v. Mason, 5 Ill. App. 142.

"A provision in a policy that it shall become void in case the premises are left vacant or unoccupied, does not render such policy absolutely void upon the happening of such event. Such provision is made for the benefit of the insurer, and if he does not elect to avoid it, neither the insured nor third parties can treat the insurance as void." Citing Germania F. Ins. Co. v. Klewer, 129 Ill. 599; Ins. Co. v. Garland, 108 Ill. 220; Mitchell v. L. M. Ins. Co., 51 Pa. St. 402; Bigler v. N. Y. L. Ins. Co., 22 N. Y. 402; Landers v. W. F. Ins. Co., 86 N. Y. 414; Davis v. Hartford Ins. Co., 13 Ia. 69; Carpenter v. Ins. Co., 16 Pet. 495.

We admit that some authorities can be cited to the effect that, though the agent knew of the existence of the second policy, and did not object to it, still this did not amount to a waiver upon the part of the company. The Michigan authorities cited by appellant's counsel, are to this effect; but the weight of authority is the other way. Richmond v. Niagara Ins. Co., 79 N. Y. 230; McCabe v. Ins. Co., 14 Hun, 602; People's Ins. Co. v. Spencer, 53 Pa. St. 353; Beal v. Park Ins. Co., 16 Wisc. 256; Hough v. City Fire Ins. Co., 29 Conn. 16; Keenan v. Mo. St. Ins. Co., 12 Ia. 126; Combs v. Hannibal, etc., Ins. Co., 43 Mo. 148.

For Illinois cases upon this question see Atlantic Ins. Co. v. Wright, 22 Ill. 462; N. E. F. & M. Ins. Co. v. Schettler, 38 Ill. 168; Ætna Ins. Co. v. Maguire, 51 Ill. 342; Reaper City Ins. Co. v. Jones, 62 Ill. 458; Ins. Co. v. Stanton, 57 Ill. 354; Lycoming Ins. Co. v. Barringer, 73 Ill. 230; St. P. F. & M. Ins. Co. v. Wells, 89 Ill. 82.

The doctrine of the case of American Ins. Co. v. Replogel, 15 N. E. Rep. (Ind.) 811, has been expressly denied by our Supreme Court. N. E. Fire & M. Ins. Co. v. Schettler, 38 Ill. 166; Western Assurance Co. v. Mason, 5 Ill. App. 141. See also Jersey City Ins. Co. v. Nichol, 35 N. J. Eq. 291, and the numerous decisions there cited, from which the court finds

the doctrine of the Indiana Supreme Court not sustained by the authorities.

LACEY, P. J.   The decision of this case rests on the issue of waiver by appellant in favor of appellee of the clause against taking out additional insurance, or if not strictly a waiver, an estoppel *in pais* against appellant to insist on such supposed forfeiture.   The facts in the case in regard to the matter are not much controverted and are few and simple, except possibly the one contention as to whether Roswell Bills & Co. were the agents of the appellant in the transactions which will hereafter be mentioned.

Appellee resides, and the house burned was on a farm in the vicinity of Peoria, Ill., and Roswell Bills & Co. were agents of the appellant and had been for twenty-five years in that locality for all commercial insurance, and at the same time were the like agents for other insurance companies.   The firm of Roswell Bills & Co. had the power as agents for the appellant in the mercantile department to issue policies of insurance, and was authorized to make indorsements on and transfers and assignments thereof without sending them away, but had no such power in regard to policies issued in the farm department, to which the risk in question belonged, as testified to by them and the general agent, Burch.   But they received policies in the farm department like the one in question and sent them to Chicago to T. R. Burch, the general agent of appellant, residing in Chicago, as matter of accommodation, as testified to by Roswell Bills.   The policy of appellee was not taken out through Roswell Bills & Co., but was obtained through insurance agents in another county.   R. Bills & Co. advertised with the knowledge of appellant their agency in Peoria without the specification of any limitation.   The facts of the case in regard to obtaining the additional insurance by appellee were about as follows:

On the 30th day of July, 1889, Roswell Bills & Co., having issued to appellee a $2,000 policy of insurance on his dwelling house, already insured in appellant's company, wrote to appellant's agent, Burch, directed to Chicago, inclosing the policy

of insurance sued on, as follows: "We * * * wish you to indorse permit for $2,000 additional insurance on the dwelling house insured in said policy. We have written $2,000 on the dwelling in Hartford Insurance Co. Please return policy to us when completed."

On the first day of August, 1889, Mr. Burch sent to them the following reply, viz.: "Gentlemen: We have your letter of the 30th ult. inclosing policy 0,263,081, Robert F. Johnston, requesting permission for $2,000 additional insurance on the dwelling, in the Hartford Insurance Co. We can not permit this further insurance without further information. The dwelling, according to the assured's application, made in December, 1887, was worth at the time only $6,000, and we have never been advised of any alterations or improvement in it whatever, and as we are now carrying $4,000 insurance on it we must be understood as positively declining to permit the other insurance of $2,000 in the Hartford."

On August 3, 1889, Roswell Bills & Co. replied to Mr. Burch, the general agent, as follows: "Dear Sir: We have yours of the first instant and note what you say of the permit for $2,000 additional insurance on the dwelling of R. F. Johnston under policy 0,263,081. When Mr. Johnston was in the office a few days ago he stated the dwelling had cost him over $9,000, and it was not many years since it was built, and from our observation of the house and our knowledge of the man, we would think $9,000 not a high estimate on the property. Mr. Johnston has gone to Kansas to be gone two weeks or more, and when he returns we will see him about it, and meantime we do not think the property over-insured at $6,000." On the 31st day of August, 1889, Roswell Bills & Co. wrote another letter to the general agent, Mr. Burch, inclosing policies 0,250,817, issued to Elmer E. Johnston, and by him assigned to Robert F. Johnston, and by him to William W. Johnston, he having purchased the property, asking consent to the assignment and a return of the policies, then adding: "In relation to the policies of Robert F. Johnston we sent you some time ago for consent to additional insurance, we saw Mr. Johnston about this time and stated what you said

about the value of his dwelling as stated in the application. He says he probably stated the value as you say, but did not expect to put any more insurance on it; but the fact is, he says the house cost him over $9,000, with all the advantages of his own labor and low prices, and he considers the house fully worth $9,000. Now, if satisfactory, please return policies and oblige." There was no reply ever sent to the two last letters, but the two policies sent for consent to assignment were returned after appellee returned from Iowa, when Mr. Bills handed them to him done up in an envelope, remarking, "There are your policies—it is all right." Bills, on appellee's starting to Iowa, had assured him the matter would be fixed up all right.

Appellee and Bills both supposed the policy in question was one of those in the envelope, and the former took the envelope home without opening it, and put it away, and never knew that the policy sued on was not in it till after the fire, when search revealed the fact that it had never been sent back from the office in Chicago. After the fire it was returned by the company to Mr. Johnston, appellee. Whether the appellant's agents in Chicago purposely omitted to return the policy and answer Bills & Co.'s two last letters, does not certainly appear, but the probability is that the matter was overlooked and neglected. It would appear that this was the case from the statements of Mr. Burch, when Mr. Bills went to Chicago to see him in regard to the matter, though the former in his testimony states that he kept the policy because they expected appellee to send them word that he had canceled it or had canceled his policy of $2,000 in the Hartford Co., and that the first letter from Bills was not answered because no answer seemed to be required.

True it is, the appellee remained from the 31st of August, 1889, to the 31st of March, 1890, the day of the fire, under the impression that the appellant had consented to the second insurance, and was surprised to learn after the fire that appellant's agent, Burch, had never passed on the question after the second application to him to do so by Bills' letter of August 31, 1889,—neither refused nor consented to the second

insurance. In reference to appellee's belief as to the agency of Bills for the appellant, he testifies he supposed Bills was the agent for it in the transactions in reference to getting the consent of the company for the additional insurance.

The question arises in this record, conceding that Roswell Bills & Co. were not the agents of appellant in the transactions in regard to obtaining the waiver of the condition in the policy in suit as to admitting the $2,000 insurance, whether or not the appellant is estopped from denying a waiver in favor of such additional insurance. We are inclined to hold under the evidence there should be such an estoppel, and consequently a waiver of the forfeiting clause in the insurance policy here in suit. The appellant's attorney insists that the clause against other insurance should be held to mean that in case other insurance is taken out by the assured without the consent of the general agent in writing, that the policy becomes absolutely void, according to the literal terms of the policy. We do not understand that to be the meaning of such forfeiting clauses, as construed by the Supreme Court of this State. Those terms simply mean that it is at the option of insurance companies to insist on holding the policy void on account of the violation of such a provision, alone made for the express benefit of the insurer. If the clause be violated by the insured, the policy will be void in the sense that no recovery can be had without waiver, and while the policy is in a state of violation, such as here, of the existence of the second insurance; but the insurer's liability will revive as soon as the policy is no longer violated. Thus, applying this rule to this case, if the Hartford policy had been canceled subsequently to its issue and prior to the loss, the appellant's policy would have revived in full force the same as it was originally. Ins. Co. v. Garland, 108 Ill. 220; Germania Ins. Co. v. Klewer, 129 Ill. 600; Ill. Fire Ins. Co. v. Stanton, 57 Ill. 354; Williamsburg City Fire Ins. Co. v. Cary, 83 Ill. 453. In Ger. Ins. Co. v. Klewer, *supra*, the court, speaking on this subject says: "A provision in a policy, it shall become void in case the premises are left vacant or unoccupied, does not render such policy absolutely void upon the happening of

such event. Such provision is made for the benefit of the insurer, and if he does not elect to avoid it, but waives the forfeiture, neither the insured nor third parties can treat the insurance as void." In Ill. Fire Ins. Co. v. Stanton, 57 Ill. *supra*, a clause in the policy making it void in case of a transfer of the title to the insured property by the insured to some other party, unless the consent of the directors to such assignment or confirmation was certified on the policy by the secretary of the company, was held to be waived by the consent of the local agent of the company before the transfer, and his assuring the insured that he could rely on the consent being given, in accordance with which the transfer was made, and the property burned before the consent of the directors was given in the manner provided for in the policy. The notice given to the local agent was held to be notice given to the company. The consent of the agent was held to be the consent of the company. In that case the court, in deciding on the merits of the case, says: "The company knew that the property covered by the policy had been thus transferred to Adam Stanton in ample time to have declared a forfeiture and cancel the policy before the happening of the loss. This they had a perfect right to do. They did not choose to exercise this power, but rather chose to retain the appellee's money paid for the premium, and carry the risk, notwithstanding the property had been sold contrary to the conditions of the policy; therefore they ought to be held by such election." It was further held in the case that the company might waive the above named condition, as well the manner of the consent, as the right to forfeit; *i. e.*, the entire clause could be waived. It is conceded by counsel for appellant that if Roswell Bills & Co. were its agents in respect to the proposed consent that the waiver was accomplished, the case coming within the rule announced in the Stanton case, *supra*, those agents, if they were such, assuring appellee when he left the matter with them and went to Iowa that it would be all right, and in substance, he could rely on the consent for the additional insurance being given by Burch.

We can not see that it makes much difference in this case whether Bills & Co. were the appellant's agents or appellee's. In either case Burch, the general agent, was notified of the additional insurance being taken out and his consent asked thereto, and if he failed to express his final dissent or pass on the case, it seems to us it. would fall under the principle announced in the Stanton case above cited, and also within the later decided case of Williamsburg City Ins. Co. v. Cary, *supra*. It appears that in the last case cited the insured sought to recover for the loss by fire of the goods insured, but removed from the place they were when insured to a different place, where they were when the loss occurred, and in consequence of a warranty that the goods were situated in the place when insured, and would remain there, and another clause that in case of the failure of the warranty the policy should be held void, the insurance company sought to defeat recovery on account of their removal. The goods were removed before any notice thereof was given or consent thereto requested. It was a contested question from the evidence, as the Supreme Court says in the opinion, whether, upon notice to the local agent of the removal, he consented thereto, though the evidence might justify the jury in so finding. But the court says, in further deciding, the notification of the local agent of the removal of the goods and the asking his consent to carry the risk in their new location was "not controverted, the consent alone being matter of contention; but the finding for plaintiff on that issue ought to be conclusive." The court adds: "At all events, the company, when notified of the change in the location of the goods, did not elect to cancel the policy," etc. * * * "On every principle of justice the non-action of the company, on receiving the information of what had been done, ought to be regarded as an election not to declare the policy forfeited on account of the removal of the goods. After notice the assured might infer the company was willing to carry the risk, notwithstanding the change in the location of the property. Had the insurer canceled the policy, as was its privilege, the assured could doubtless have been able to procure other insurance, and in all probabil-

ity would have done so. The non-action of the company was an indication it was willing to continue the policy in force, and may reasonably have inspired that belief in the mind of the assured." The court further holds that removing the goods before giving notice of the intended removal would not, under the policy, render it void, if notice were given before the loss, thus giving the assured the right to cancel the policy.

The facts in this last case are very similar to the facts of the case now under consideration, except if Bills & Co. were not the agents of appellant there was no promise or assurance that the consent would be given for additional insurance; but Burch, the general agent, was notified of the new insurance and requested to give consent.

It is, however, most strenuously urged by counsel for the appellant, that Burch, by his letter in answer to the first letter of Bills & Co. asking consent to the new insurance, positively refused to give that consent, and that he was not compelled to answer the other letters, to continue refusing every time he was requested to give consent. We will examine this question closely, for much depends on it. It is true that Burch did say in his letter that he positively declined to permit the additional insurance, but this was said with an express qualification that he could not grant the request " without further information," and then went on to explain that appellee's application for his insurance only valued his house at $6,000, and he had not been advised of any improvement being put on it, and that they were carrying $4,000 on it. These were the circumstances that induced him to decline the request to allow other insurance on the house.

Here we think was a plain intimation that if he could be shown that appellee's house was worth enough more than the $6,000 to justify it, the permission would not be refused, and the intimation was that he was open to conviction. Appellee and Bills & Co. both understood the letter in this light and acted on it as any reasonable man would have done under the same circumstances.

They proceeded to furnish the desired information as to the value of the house and to renew their request for his permis-

sion for the new insurance. On August 3, 1889, Bills & Co. wrote a letter in explanation of the value of the house giving appellee's estimate at $9,000, and their own indorsement of appellee as a man and as to the value of the house, suggesting that appellee had gone to Kansas and on his return would see him about it, and adds, "in the meantime we do not consider the house over-insured."

This letter was not answered by Burch for the reason it did not seem to call for answer, as he testified or stated. It really did not, and especially if Burch was willing to permit the additional insurance, until Bills & Co. saw Johnston again; but if he was not willing to stand the risk that long, it seems to us good faith would have required him to write to Bills & Co. and say so plainly. There was an assumption in this letter of Bills & Co. that they were acting as the agents of appellant in the premises when they say "in the meantime we do not think the property over-insured at $6,000." What right had Bills & Co. to use this language if not in behalf of appellant? It could not have been in behalf of appellee, for he was in opposite interest. If this suggestion was made by Bills & Co. to Burch as the appellant's agent, it clearly fixes its consent by not answering at once and repudiating the judgment and consent of the agents. If this suggestion was made by Bills & Co. as appellee's agents then Burch must have understood that Johnson, after giving the desired information indorsed by his agents, men in whom it might reasonably be supposed Burch had great confidence from the relations which they then, and had long sustained to him, assumed that this explanation would be entirely satisfactory to him, at least till he returned from Kansas and gave further information. In the latter condition of affairs the letter called loudly for an answer from Burch. But when the last letter of the 31st August, 1889, was sent by Bills & Co. to Burch, calling his attention to his former letter and giving appellee's full explanation of the matter of the value of the house and requesting Burch's final action in the matter, then we think it became his duty to at once make his final decision. The not answering this last letter seems inexplicable to us on any other hypothesis than, as Burch stated to

Roswell Bills, it was an oversight. If this matter had been attended to as it should have been and the application passed upon, it would seem to us the action of Burch must have been to grant appellee's request. The information seemed to give a reasonable explanation of the value of the house, and appellee and his statements were so favorably indorsed by appellant's old agents, it seems more than probable it would have been satisfactory.

But whether it would have been or not, as we have shown by the citation of the above authorities, it was his duty to answer, if he did not wish to continue the insurance, thus giving appellee opportunity to take out additional insurance in another company or to cancel that in the Hartford. We regard it as the settled law in this State that the insurer, when applied to for the purpose of choosing his course in a matter like this, is bound to make his selection and give notice of it to the insured, otherwise the insured may assume that the permission is granted. Fair dealing and good faith would seem to require it. Whatever may have been the decisions of the courts in other States in regard to this question, our own Supreme Court seems to have fully settled the law against the contention of appellant's counsel. Taking this view of the case we need not consider the questions raised on the rightfulness of the instructions for appellee, the question as to whose agents Bills & Co. were, whether the taking out of the insurance complained of on the house alone, and not covering all the property insured in the policy in suit, was a violation of the letter or spirit of the policy, or the other various questions raised.

The judgment of the court below is therefore affirmed.

*Judgment affirmed.*