**NEW YORK LIFE INSURANCE COMPANY, Plaintiff,**

v.

Norman S. LAWSON, Executor of the Estate of Marcia L. Winn, Margaret B. Manear and Sara Neff Grove, Defendants.

**NEW YORK LIFE INSURANCE COMPANY, Plaintiff,**

v.

Norman S. LAWSON, Executor of the Estate of Marcia L. Winn, and Joseph T. (sometimes known as Joe T.) Winn, Defendants.

Civ. A. Nos. 1500, 1501.

United States District Court
D. Delaware.

Sept. 2, 1955.

**64**

Richard F. Corroon (of Berl, Potter & Anderson), Wilmington, Del., for plaintiff.

Caleb M. Wright, Georgetown, Del., for defendant Norman S. Lawson.

Ralph S. Baker, Georgetown, Del., for defendants Margaret B. Manear, Sara Neff Grove and Joseph T. Winn.

LEAHY, Chief Judge.

Plaintiff insurance company filed a bill of interpleader seeking an adjudication of beneficiaries entitled to the proceeds of three insurance policies upon the life of the late Marcia L. Winn. The total proceeds of the three policies satisfy the requisite jurisdictional amount. There is no dispute of facts for a stipulation of facts was agreed to by all parties. Prior to August 14, 1954, the de-

ceased was the owner of three annuity policies whose beneficiaries were:

Policy No. 113 254—Joseph T. Winn

Policy No. 202 825—Margaret B. Manear and Sara Neff Grove

Policy No. 213 234—Margaret B. Manear and Sara Neff Grove

By letter dated August 14, 1951, Mrs. Winn wrote to plaintiff requesting "forms and instructions for changing beneficiaries in three policies I have in your company". Two days later plaintiff replied, requesting names of the proposed beneficiaries and their relationships so the proper forms could be forwarded. To plaintiff's letter the insured replied in her own handwriting,[1] dated August 31, 1951, in part as follows:

"I would like the beneficiaries of the *three* annuities to be changed to payable to my *estate* (so that in case of my death the amounts to be put in with the general estate) and I shall attend to the individuals in my will." (Emphasis by the insured).

On September 13, 1951, Marcia L. Winn died, after having first made her will, dated September 8, 1951, naming defendant Lawson executor of her estate. Thereafter by letter dated September 17 plaintiff forwarded the "official" forms to be completed for the change in beneficiaries with instructions they be signed, witnessed and returned to plaintiff with the three policies.

The policies provide the procedure for change of beneficiary:

"Beneficiary. The Annuitant may from time to time change the Beneficiary, unless otherwise provided by indorsement on this Policy or unless there be an existing assignment of this Policy. Every change of beneficiary must be made by written notice to the Company, at its Home Office accompanied by the Policy for indorsement of the change thereon by the Company, and unless so indorsed the change shall not take

1. In fact, the insured wrote her reply on the back of plaintiff's original letter.

effect. After such indorsement the change will relate back to and take effect as of the date the Annuitant signed said written notice of change whether the Annuitant be living at the time of such indorsement or not, but without prejudice to the Company on account of any payment made by it before receipt of such written notice at its Home Office. Unless otherwise provided herein, the interest of any beneficiary dying before the Annuitant shall vest in the Annuitant."

1. The question for decision is whether the deceased during her lifetime effected a legally recognizable change of beneficiaries. Defendants Winn, Manear and Grove (original beneficiaries) contend the deceased's mere expression of a desire to change beneficiaries, absent a transmittal of the policies to the plaintiff-insurer for indorsement, does not constitute compliance with the formal requirements of the policies. Defendant Lawson, qua executor, argues the deceased did all within her power to disclose her intention to consummate the change of beneficiaries before her death.

2. All counsel for claimants agree the Delaware Courts have adopted the substantial compliance doctrine in cases involving validity of a change of beneficiary, but part company in their views whether the deceased's actions in the instant case fall within the ambit of this equitable principle.

3. From the legion of cases involving status of beneficiaries under policies of insurance, certain fundamental principles are guide-posts in the determination of this problem.[2] A named beneficiary has a vested interest in a policy of insurance unless the right to change the beneficiary is reserved in the policy or given by statute.[3] An insurer, however, has no discretion to refuse to indorse the change of beneficiary in the policy when the insured has sent the policy to the home office with a request for the change.[4] A court of equity, considering that done which ought to be done, will treat an attempted change as actually accomplished, where the insured has done all she could to bring about that end to the extent her intent is plainly manifested.[5]

For decision here I adopt Chancellor Wolcott's view in New York Life Insurance Co. v. Cannon,[6] where concerning the necessity for compliance with the policy provisions in attempting a change of beneficiary, he wrote:

"* * * The bringing of the fund into court and the demand by the company that the rival claimants litigate their respective claims thereto, constitute a waiver by the company of a compliance by the insured with the provision as to surrender of the policy on a change of beneficiary. McDonald v. McDonald, 212 Ala. 137, 102 So. 38, 36 A.L.R. 761."

4. Having determined precise compliance with the policy provisions is not inexorable, the question is whether the deceased as the insured did all she could to accomplish the purpose she allegedly had in mind. Defendants Winn, Manear and Grove argue the failure to forward the policies along with her letter of August 31, wherein she designated her estate as proposed beneficiary, evidences an abandonment by the deceased of her intent to effect such a change. The realistic facts do not lend themselves to such an interpretation. Mrs. Winn's

2. See, e. g., collection of authorities and discussion in 29 Am.Jur., Insurance, §§ 1315, 1320, 1324; 78 A.L.R. 966, 976; 19 A.L.R.2d 33, 35, 41, 44, 101, 104–105, 128–129; 48 Mich.L.Rev. 591, Grismore, "Changing the Beneficiary of a Life Insurance Contract"; 13 U. Boston L.Rev. 391, Grossman, "Problem of the Insurer When Attempted Change Is Incomplete, Irregular, or of Doubtful Validity".

3. Metropolitan Life Ins. Co. v. O'Donnell, 11 Del.Ch. 404, 102 A. 163.

4. Reid v. Durboraw, 4 Cir., 272 F. 99.

5. New York Life Ins. Co. v. Cannon, 22 Del.Ch. 269, 194 A. 412.

6. Id., 194 A. at page 413.

letter of August 31 was written on the insurer's letter to her wherein she was requested to identify the proposed beneficiaries. She did this. Nowhere in the insurer's letter of August 16 did it ask delivery of the policies to it for indorsement. The deceased did not transmit the policies along with her reply for the obvious reason she did not think the plaintiff-insurer wanted or needed them. In fact, the deceased wrote in her letter: "I have the annuities, here with me." While the contracts of insurance looked to actual delivery of the policies to the insurer in re change of beneficiaries, I do not think Mrs. Winn had realization of this fact.

It was not until plaintiff's letter of September 17, (written four days after the death of Mrs. Winn), enclosing the formal forms for execution, was there any mention of the necessity for transmitting the policies or contracts. If subjective intent is to be sought, the guide as to what the deceased would have reasonably been expected to know about the procedure for changing beneficiaries must be found from the internal evidence as to what occurred.[7] Her letter of August 14, the first in the series of correspondence, indicates her knowledge of the procedure involved was limited since she asked not only for forms but "instructions" as well. In the light of the deceased's knowledge of what was required of her near the terminal point of her existence, *she had done all she thought necessary*. True, there were steps yet to be completed before a beneficiary change, within the meaning of the policy provisions and the insurance company's rules. But death intervened. The clear wishes of a dead woman should be respected, especially where a corporate insurer has by the nature of the institution of its own litigation insulated itself from a duality of liability.

I conclude the deceased's intent to change beneficiaries crystallized

in law and warrants the finding she had complied with plaintiff's requirements for designating her estate as the final beneficiary of the policies in suit. Such is the law of Delaware, and I am not only bound by it in a diversity case, but I agree with it.

7. Lord Chancellor Sugden in Attorney General v. Drummond, 1 Drury & Warren 353, 368, said: "Tell me what you have done under such a deed, and I will tell you what that deed means".