HARRY R. VIRGIN, Exor.,

*vs.*

ERNEST H. MARWICK, and others.

Cumberland.    Opinion June 30, 1903.

*Adoption. Life Insurance. Will. R. S., 1857, c. 59, §§ 28, 29; 1871, c. 67, §§ 30, 31; 1883, c. 75, § 10.*

The term child, by the statutes of this State regulating adoption of children, has a broader significance than issue.

When a statute authorizes a full and complete adoption, the child adopted thereunder acquires all of the legal rights and capacities, including that of inheritance, of a natural child; and is under the same duties.

A policy of life insurance, issued in 1863 in this State, payable to the assured, his executors, administrators or assigns, for the benefit of his widow, if any, otherwise for the benefit of his surviving children, passes by the will of the assured to a child adopted afterward, no widow or issue surviving, it being the intention of the testator to provide for that person surviving him who stood in the legal relation of a child.

Such beneficiary must be regarded as the testator's child, not by birth, but by law, and entitled to the proceeds of the policy as clearly as if he had been designated by name in it.

*Held;* that the adopted child's right thereto was by virtue of the contract in the policy; and so vested in him that it could not be altered or taken away by will or otherwise.

The provisions of R. S., c. 75, § 10, relating to the premiums for the last three years, do not apply to one who takes, not by descent, but as a beneficiary designated in the policy.

On report. Bill sustained and decree according to the opinion.

Bill in equity asking for the construction of the will of Edward A. Marwick, of Portland, deceased.

The case appears in the opinion.

*Franklin C. Payson and Harry R. Virgin,* for plaintiff.

*Frank W. Butler,* for defendant Marwick; *Robert T. Whitehouse, Jed F. Fanning, Charles E. Burbank,* for other defendants.

SITTING: WISWELL, C. J., EMERY, STROUT, PEABODY, SPEAR, JJ.

STROUT, J. This is a bill asking construction of the will of Captain Edward A. Marwick, but to facilitate settlement of the estate, the parties request that it may also be regarded as a bill of interpleader, so far as the disposition of money received upon two life insurance policies is concerned, and as all parties interested in the fund are before the court, we accede to the request.

July 17, 1863, Captain Marwick took a policy of insurance upon his life in the New England Mutual Life Insurance Company, for five thousand dollars, in which the company promised to pay that sum to "the said assured, his executors, administrators or assigns sixty days after due notice and proof of the death of the said assured" . . . . "for the benefit of his widow, if any, otherwise for the benefit of his then surviving children."

January 28, 1865, he took another policy for five thousand dollars in the same company, with the same provisions as to payment as in the first policy,—"for the benefit of his widow, if any, and his then surviving children, in equal shares to each." Marwick was married in 1860. His wife was living when these policies were issued. In 1861 she gave birth to a child, which deceased in about two weeks after its birth. She never bore another child, and died before her husband who did not again marry. Marwick died February 16, 1895, leaving neither widow nor issue of his body.

In October, 1872, Captain Marwick and his wife petitioned the Probate Court for leave to adopt a boy named Ernest H. Gruntzow, and that court at a term held on the first Tuesday of October, 1872, after hearing,—"decreed and declared that from and after the date hereof the said child shall be to all legal intents and purposes the child of said petitioners, and that his name be hereby changed to that of Ernest Herman Marwick", and delivered to Captain Marwick and his wife a certificate signed by the judge, under seal of the court, in which it was stated "that from this day said child shall to all legal intents and purposes be your child". . . . "You therefore assume the relation of parents to said child, and will hereafter cherish, support, educate and otherwise provide for him as though you were his natural parents." Thenceforward Ernest was the legal child of Captain Marwick, from whom he was entitled to receive the same respect, obedience and service as from a natural child, and to whom he owed all the duties of a parent. This relation existed until the death of Captain Marwick.

Ernest now claims the proceeds of these policies of insurance, which have been paid to the executor, as legal child of Captain Marwick. The claim is resisted by other parties interested in Captain Marwick's estate.

If Ernest is to be regarded as a child of Captain Marwick, within the scope and meaning of these policies, then he is entitled to their proceeds as clearly as if he had been designated by name in them. His right thereto was by virtue of the contract, and so vested in him that it could not be altered or taken away by Captain Marwick by will or otherwise. The estate of Captain Marwick can take no part of them.

The statute in force when this adoption was had, R. S. of 1871, c. 67, provided in section 30 that after the prescribed proceedings in the Probate Court had been taken, the judge of probate "shall make a decree setting forth the facts, and declaring that from that date such child is the child of the petitioners", and by section 31, such adopted child "shall be, for the custody of the person and right of obedience and maintenance, to all intents and purposes, the child

of the adopters, as if they had been his natural parents", except as to the right of inheritance.

Revised Statutes of 1857, c. 59, §§ 28 and 29, in force when these policies were issued contained the same provisions as those in R. S. of 1871, c. 67. They applied to these policies, with such consequences as might legally result therefrom, in case of any future adoption. The contract was not limited to issue. The term child has a broader significance than issue.

The status of an adopted child is well defined by the court in *Power* v. *Hafley*, 85 Kentucky, 674: "It is the event of adoption that fixes, under the law authorizing the adoption, the legal status of the adopted child; and the child, by the event of adoption, becomes the legal child of the adopting parent, and stands, as to the property of the adopting parent, in the same light as a child born in lawful wedlock, save in so far as the exceptions in the statute authorizing the adoption declare otherwise. And when the statute authorizes a full and complete adoption, the child adopted thereunder acquires all of the legal rights and capacities, including that of inheritance, of a natural child, and is under the same duties." See also *Humphries* v. *Davis*, 100 Ind. 274; *Wagner* v. *Varney*, 50 Iowa, 532.

In *Waldoboro* v. *Friendship*, 87 Maine, 211, it was held that an adopted child took the pauper settlement of the party adopting him. PETERS, C. J., in that case said,—"the common law established certain legal relations between a father and his child, and the statute substitutes the same legal relations between the father and his adopted child. The latter are as legal as the former,—both are legal, the latter superseding the former." The adoption in that case was under the Revised Statutes of 1871, which also govern the present case, and under the statute which provided that legitimate children have the settlement of the father. The same doctrine was held in Massachusetts in *Washburn* v. *White*, 140 Mass. 568, under a statute which provided that "legitimate children shall follow and have the settlement of their father." The court said: "One of the legal consequences of the natural relation of a child born to parents in lawful wedlock is, that it shall take the settlement of its father

if he has any within the State. To this legal consequence the adopted child Dora became subject immediately upon her adoption." The law of that State in regard to adoption of children was no broader than that of this State at the time of the adoption of Ernest, except that it gave the adopted child the right of inheritance.

In *Warren* v. *Prescott*, 84 Maine, 483, a legacy was given to a person who died before the testator — the legatee had an adopted child. The question was whether that child took the legacy, and it was held that he did, not by inheritance as heir, — "but as a statutory lineal descendant, and as lawfully in the line of descent as if he were placed there by birth".

With two exceptions as to inheritance, the statute made an adopted child "to all intents and purposes the child of his adopters, as if they had been his natural parents".

In *Martin* v. *Ætna Life Insurance Co.*, 73 Maine, 25, a policy upon the life of John Wall, Jr., was issued to his wife and payable to her or her legal representatives for her sole separate use, and in case of her death before that of her husband, the amount to be paid to "their children". They had no child by birth, but had one by gift and adoption. It was held that the adopted child took the insurance under the express terms of the policy. The court said: "The word child in legal documents is not always confined to immediate offspring. It may include grandchildren, step-children, children of adoption, etc., as may be necessary to carry out the intention. See also *Warren* v. *Prescott*, 84 Maine, 483.

We think it clear that Ernest must be regarded as the child of Captain Marwick, not by birth but by law.

Does he come within the intention of Captain Marwick, when he effected these policies? By them he intended to provide for a wife, which he then had, in the event of her surviving him, and in case of her death, that the beneficiary should be his child or children that might be living at his decease. His wife had given birth to a child in 1861, which lived only two weeks. For eleven years thereafter no child had been born, and it is altogether probable that he had abandoned expectation of a natural child. Both he and his wife adopted Ernest, and must have desired and intended him to take the

place of a child by birth. The law invoked by them made Ernest their child, to all intents, except right of inheritance.

To ascertain the intention of parties to a contract, its language is to be considered in the light of conditions existing at the time of its execution. Their position and relations to the subject matter often afford aid in its interpretation. When these policies were taken, Captain Marwick had a wife, but no child. He contemplated the probability that a child might be born to him—probably desired it. With that end in view he made the provisions contained in these policies. It was not in his power to change the beneficiary of the fund, by will or otherwise, if either wife or child survived him.

It was manifestly the intention of Captain Marwick, when he took these policies, to provide for that person surviving him who stood in the legal relation of a child. He asked the law to make Ernest his child. It did so, by formal decree. The rights and duties of parent and child then arose. It would be a reflection upon the sense of justice of Captain Marwick, as a statutory father to the child, to hold that he did not intend this policy to apply to him. There is no evidence that, when these policies were written, he intended to exclude from its provisions any one who should occupy the relation of a child, by birth or otherwise. The contract, construed according to the intention at the time, if not inconsistent with its language, must govern.

It is urged that when in 1885 Captain Marwick made a will, and later in 1895, one month before his death, when he made his last will, he treated the money to be paid upon these insurance policies as belonging to his estate, and made legacies the full payment of which could not be effected without including it, he thereby indicated an intention that Ernest should not be a beneficiary under these policies. Whether so or not, it was many years after the contracts were made, and it was beyond his power to change them or the beneficiaries under them. Making bequests beyond the ability of the estate to pay, is not very uncommon, and is entitled to little weight in ascertaining the scope of a contract made many years previous. *Hathaway* v. *Sherman,* 61 Maine, 475; *Gould* v. *Emerson,* 99 Mass. 157.

Upon the death of Mrs. Marwick the adopted son became the beneficiary designated under each of the policies, as the only surviving child, and is entitled to the whole fund realized from them, less the expense of collection, if any. We cite as bearing upon the question, *Sewall* v. *Roberts,* 115 Mass. 276.

The provisions of R. S., c. 75, § 10, in regard to the premiums for the last three years, do not apply. Ernest does not take by descent, but under the contract, as the beneficiary designated therein.

Certain releases were given by Ernest and other legatees under the will in deference to the supposed wish of Captain Marwick, but these appear to have been without consideration and of no effect. They are not relied on by any of the parties to this suit. We therefore do not consider them.

Our conclusion, that Ernest H. Marwick is entitled to the entire proceeds of the insurance policies, affords an answer to all the questions propounded in the bill, which are now insisted upon.

By the agreement of parties, the decree to be filed shall allow to each of the attorneys in defense the sum of fifty dollars for services, to be paid by the executor from the fund in controversy in this case.

*Decree in accordance with this opinion.*