**Paul H. LAMARCHE, Plaintiff**

v.

**METROPOLITAN LIFE INSURANCE CO., Defendant and Third–Party Plaintiff**

v.

**Lorna Armesto, Third–Party Defendant**

**No. Civ. 01–123–B–H.**

United States District Court,
D. Maine.

Dec. 16, 2002.

John A. Woodcock, Jr., Weatherbee, Woodcock, Burlock & Woodcock, Bangor, ME, for Paul H Lamarche, In his capacity as Personal Representative of the Estate of Erlinda Polvorosa Lamarche and as Trustee of the Erlinda A. Polvorosa Family Trust, plaintiff.

Jon Haddow, Farrell, Rosenblatt & Russell, Bangor, ME, for Metropolitan Life Insurance Company, defendant.

### ORDER AFFIRMING RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

HORNBY, Chief Judge.

The United States Magistrate Judge filed with the court on November 6, 2002,

with copies to counsel, her Recommended Decision on Lorna Armesto's Motion for Summary Judgment and Related, Non-Dispositive Motions. The time within which to file objections expired on November 25, 2002, and no objections have been filed. The Magistrate Judge notified the parties that failure to object would waive their right to *de novo* review and appeal.

It is therefore **ORDERED** that the Recommended Decision of the Magistrate Judge is hereby **ADOPTED**. Third-party defendant Armesto's motion for summary judgment is **DENIED**.

So **ORDERED**.

### RECOMMENDED DECISION ON LORNA ARMESTO'S MOTION FOR SUMMARY JUDGMENT AND ORDER ON RELATED, NON-DISPOSITIVE MOTIONS

KRAVCHUK, United States Magistrate Judge.

This case presents a contest between Paul LaMarche and Lorna Armesto over who is entitled to the proceeds of two life insurance annuity contracts issued by Metropolitan Life Insurance Company to Erlinda Polvorosa LaMarche ("Polvorosa"). In August 2000, Armesto filed suit against Metropolitan in the Supreme Court for the State of New York, seeking to recover the proceeds of the contracts. In June 2001, Paul LaMarche initiated suit against Metropolitan in this Court, seeking, among other relief, a declaration that he, as Trustee of the Erlinda A. Polvorosa Family Trust, is the proper beneficiary of the annuity contracts rather than Armesto.

In August 2001, Metropolitan haled Armesto into this Court by means of the federal interpleader statute, 28 U.S.C. § 1335, which also served to stay Armesto's New York proceeding.

Currently pending are the following eight motions, only five of which are addressed in this decision:

(1) Metropolitan's Motion for Judgment on the Pleadings and To Dismiss all claims pending against it, *Docket No. 30;* [1]

(2) Metropolitan's Motion to Strike Expert Testimony offered by LaMarche, *Docket No. 33;*

(3) Metropolitan's Motion for Summary Judgment, *Docket No. 34;*

(4) Armesto's Motion for Summary Judgment on Counts I and II of *her* cross-claim, *Docket No. 37;*

(5) Armesto's Motion to Amend her Cross-Claim, *id.;*

(6) Armesto's Motion to Strike Expert Testimony, *id.;*

(7) LaMarche's Motion to Strike portions of two affidavits submitted by Armesto in connection with her bid for summary judgment, *Docket No. 48;* and

(8) Metropolitan's Motion to Strike portions of an affidavit submitted by LaMarche in opposition to summary judgment, *Docket No. 56.*

I address these several motions in two groups. The instant Recommended Decision and Order addresses the latter five motions, which are raised in the filings entered under Docket Numbers 37, 48 and 56.[2] I address the former three filings in

---

1. Docket numbers are provided solely for the Court's convenience in reviewing the many motions and related filings on the Court's docket.

2. These several filings all relate to the question of whether summary judgment should

enter for Armesto on her contract claims for the insurance proceeds. Although Metropolitan describes itself as disinterested in who ultimately receives the proceeds, it has "joined" in Armesto's summary judgment motion. *Docket No. 34* at 1. Metropolitan has also contributed to Armesto's summary judg-

a separate Recommended Decision on Metropolitan Life's Motion for Judgment on the Pleadings and Motion for Summary Judgment, issued on even date herewith.

For the reasons stated herein, I **RECOMMEND** that the Court **DENY** Armesto's motion for summary judgment. I also **DENY** Armesto's motion to amend her cross-claim; **DENY** Armesto's motion to strike expert testimony; **GRANT** La-Marche's motion to strike; and **DENY** Metropolitan's Motion to Strike portions of an affidavit submitted by LaMarche in opposition to summary judgment.

### Summary Judgment Standard and Local Rule 56

Summary judgment is warranted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir.2000). Local Rule 56 sets forth the precise manner in which motions for summary judgment are to be presented in this Court. Failure to abide by its dictates can have dire consequences for litigants and their counsel, the least significant of which being the non-consideration of otherwise material evidence. *See, e.g., Liston v. Unum Corp. Officer Severance Plan*, 211 F.Supp.2d 222, 226 (D.Me.2002); *Learnard v. Inhabitants of Van Buren*, 182 F.Supp.2d 115, 119–120 (D.Me.2002); *see also Plumley v. Southern Container,*

*Inc.*, 2001 WL 1188469, at *2, 2001 U.S. Dist. LEXIS 16040, at *4 n.1 (D.Me. Oct. 9, 2001); *Dermalogix Partners, Inc. v. Corwood Lab., Inc.*, 2000 WL 760732, at *1 n.1, 2000 U.S. Dist. LEXIS 8009, at *1 n. 1 (D.Me. March 14, 2000); *Williams v. HealthReach Network,* 2000 WL 760742, at *2, 2000 U.S. Dist. LEXIS 9695, at *7 (D.Me. Feb. 22, 2000).

· In this case, Armesto has filed a proper motion for summary judgment supported by a proper statement of material facts. LaMarche has, likewise, responded with an opposition brief and a proper opposing statement of material fact. However, rather than setting forth his own, additional facts *within* his opposing statement in a "separate *section* [of] additional material facts, set forth in *separate* numbered paragraphs," *see* D. Me. Loc. R. 56(c), LaMarche has provided the Court with a separate filing captioned, "Plaintiff Paul H. LaMarche's Statement of Material Facts as to Which There is No Genuine Issue to be Tried," *Docket No. 49.* Presumably, counsel for LaMarche thought that it would be easier for the Court if he submitted only one statement of additional material facts for both Armesto's and Metropolitan's summary judgment motions.[3] In his favor, I do recognize that both Armesto and Metropolitan Life rely on similar legal arguments in support of their motions. However, Metropolitan's motion addresses claims that Armesto's does not and facts that might be material to Metropolitan's motion are not material to Armesto's. In a case such as this, where there are eight motions pending and twelve additional, re-

ment effort by submitting a motion to strike a piece of the summary judgment record offered by LaMarche. *Docket No. 56.*

**3.** I note that Local Rule 7 does not preclude the filing of consolidated memoranda. However, LaMarche's consolidated response makes no distinction between the "facts" for purposes of the 12(c) motion and the "facts"

for purposes of the two summary judgment motions. I may have inadvertently contributed to this confusion by endorsing plaintiff's request for an extension of time to respond in order to allow a "coordinated" response to all pending dispositive motions. (*Docket No. 40* ).

lated filings on the docket, it is helpful if the parties segregate their motions and filings into discrete groups, properly label their filings and comply strictly with the Local Rules.

Although LaMarche's additional facts are not properly included in his opposing statement of fact, Armesto has failed to controvert LaMarche's statement of additional material facts by means of a reply statement.[4] Under normal circumstances, this omission would result in the deemed admission of LaMarche's additional facts. D. Me. Loc. R. 56(e). It is largely because of Armesto's failure to either reply or object that I have considered LaMarche's additional statement of fact for purposes of summary judgment.

## FACTS[5]

In March 1984, Metropolitan Life Insurance Company ("Metropolitan") issued Flexible Annuity Contract No. 010257663AB to Erlinda Polvorosa LaMarche ("Polvorosa"). *Defendant Lorna Armesto['s] Statement of Material Facts, Docket No. 38,* at ¶ 3. Polvorosa designated Lorna Armesto as the beneficiary in the event of her death. *Id.* In August 1987, Metropolitan issued Group Annuity Contract No. 060350706VE to Erlinda Polvorosa. *Id.,* ¶ 4. Polvorosa again designated Armesto as the beneficiary. *Id.,* ¶ 4. Both

of these policies are qualified retirement plans. *Plaintiff Paul H. LaMarche's Statement of Material Facts as to Which There is No Genuine Issue To Be Tried, Docket No. 49,* ¶ 4.

Lorna Armesto was Polvorosa's sister. *Id.,* ¶ 2. Paul LaMarche married Polvorosa in December 1995 and remained her husband until her death on August 22, 1998. *Docket No. 38,* ¶ 6; *Docket No. 49,* ¶¶ 6, 9.

In 1997, Erlinda Polvorosa had a falling out with Armesto. *Docket No. 49,* ¶ 7. Between September 1997 and the execution of her last will and testament on November 24, 1997, each of three successive drafts of the will excluded Armesto from any of the proceeds of Erlinda Polvorosa's estate. *Id.; Docket No. 38,* ¶ 16. The final, executed version of the will, in its fifth declaration, gives Armesto an equal share with eight other named beneficiaries in a certain Erlinda A. Polvorosa Family Trust, to be funded with "the remaining balance of any qualified retirement plan on account at Metropolitan Life Insurance Company." *Docket No. 38,* ¶ 17 & Ex. 12; *Docket No. 49,* ¶¶ 1, 2. The fifth declaration that the Trust is to be funded by "the remaining balance of any qualified retirement plan on account at Metropolitan Life Insurance Company" is a reference to Flexible Annuity Contract No. 010257663AB and Group Annuity Contract

4. I note that Armesto also asserts new facts in her reply brief, including the suggestion that Erlinda Polvorosa had seven policies at Metropolitan Life Insurance and that Metropolitan's policies limit the authority of sales representatives to effect changes in the policies' provisions. *Third Party Defendant Lorna Armesto's Reply Memorandum of Law, Docket No. 54,* at 1, 2–3. Armesto also repeatedly cites to the "record" in her reply brief rather than to an appropriate paragraph within a reply statement of material facts. This is also a violation of Local Rule 56. If a party considers evidence to be material to the matter presented, it *must* properly introduce that fact into the summary judgment record.

5. As summary judgment practice requires, the factual statement contained in this decision credits all of the admissible evidence properly offered by LaMarche, construes the entire record in the light most favorable to LaMarche and resolves all reasonable inferences in his favor. Armesto's statement of facts and the depositions of Brann and Elliot make it clear that there are hotly disputed facts about what occurred at the meeting on October 1, 1997, at the visit with LaMarche and Polvorosa.

No. 060350706VE, hereinafter referred to as the "subject annuities." *Docket No. 49,* ¶ 5.[6] As the Trustee of the Erlinda A. Polvorosa Family Trust, LaMarche is not himself a named beneficiary. *Id.,* ¶ 1.

On October 1, 1997, two Metropolitan agents, James Brann and David Elliot, visited with LaMarche and Polvorosa in their home. *Docket No. 38,* ¶ 12; *Plaintiff Paul H. LaMarche's Response to Defendant Lorna Armesto's Statement of Material Facts, Docket No. 47,* ¶ 12; *Docket No. 49,* ¶ 8. Polvorosa intended to change the beneficiary designations in the subject annuities to name as beneficiary the Trustee of the Erlinda A. Polvorosa Family Trust.[7] The purpose of the meeting was to inform the agents of changes to Polvorosa's will and to LaMarche's will and to sign any paperwork required to make these changes effective. *Docket No. 49,* ¶ 8. Although LaMarche acknowledges that he did not observe Polvorosa fill out change of beneficiary forms or hand them to the agents, he does offer an alleged admission by James Brann, which he claims was made to him one year after Erlinda Polvorosa's death. According to LaMarche, Brann stated, in response to questioning as to why the change of beneficiaries had not been made, that it had been the first time either he or Elliot had dealt with a request to change a beneficiary to a trustee named in a will and that they had not known "what to do with the *forms.*" *Docket No. 49,* ¶ 11 (emphasis added).[8]

LaMarche otherwise admits (1) that Polvorosa did not write a letter to Metropolitan requesting a change of beneficiary form or requesting or directing Metropolitan to change beneficiaries on the subject annuities and (2) that Metropolitan has no "record" of Polvorosa ever executing a change of beneficiary form or making any request to change beneficiaries from October 1, 1997 to the date of her death. *Docket No. 47,* ¶¶ 10, 11 (admitting statements found in *Docket No. 38,* ¶¶ 10, 11).

Each of the subject annuities contains slightly different language regarding the steps required to change a beneficiary. Flexible Annuity Contract No. 010257663AB provides, "You may change the beneficiary or contingent beneficiary of this contract by written notice. No change is binding on us until it is recorded at our Home Office or other office named by us." Group Annuity Contract No. 060350706VE provides, "You may change your designation of beneficiary, or an Annuitant may change his or her designation of beneficiary, by notice to us. Upon our receipt of the notice the change will take effect as of the date the notice was signed...." *Docket No. 47,* ¶ 5. Thus, both of the subject annuities require that a notice of a change in beneficiary be submitted in writing. Contract No. 060350706VE further requires that the notice be signed. Contract No. 010257663AB mentions recordation at the "Home Office," but does not state that notice must be sent directly to the home office.

---

6. I note that the two record sources LaMarche cites do not literally support this contention. Nevertheless, because LaMarche has established that these annuities were "qualified retirement plans," *Docket No. 49,* ¶ 4, I consider the foregoing assertion to be an appropriate inference for the Court to draw under the "light most favorable" summary judgment standard.

7. Though not explicitly stated, I infer this specific material fact from the much more general statement contained in Lamarche's Statement of [Additional] Material Fact, *Docket No. 49,* ¶ 8, and from the language found in the Fifth Declaration of Erlinda Polvorosa's Will.

8. This statement is the subject of Metropolitan's motion to strike.

In order to designate as beneficiary a trustee named under an insured's will, Metropolitan's Manual of Instructions for Sales Representatives requires the agent processing such a request to "write to the head office, furnishing full particulars." *Docket No. 49*, ¶ 10. David Elliot was unaware of this provision in the fall of 1997 and had not reviewed the manual for ten years. *Id.*

## DISCUSSION

### A. *Metropolitan's Motion to Strike*

Although Metropolitan has not briefed the summary judgment issues raised by Armesto or replied to what I have construed as LaMarche's statement of additional material facts, Metropolitan has weighed in on the summary judgment question by means of a motion to strike key testimony offered by LaMarche. *Docket No. 56.* I address this motion here, rather than in my companion decision and order, because it has direct bearing on the summary judgment facts set out in the immediately preceding section. Metropolitan's motion and LaMarche's opposition reveal the following:

LaMarche's deposition was taken on July 3, 2002, the last day of a twice-extended discovery deadline. At his deposition, LaMarche and counsel for Metropolitan engaged in a colloquy in which LaMarche described his interactions with Metropolitan's agents after his wife's death. LaMarche testified that he met with Mr. Brann and Mr. Elliott a couple weeks after Polvorosa's death and was informed that he was not on record as being the beneficiary of the subject annuities. *LaMarche Deposition Transcript* at 43–45. LaMarche stated that he was surprised to discover that the agents had not changed the beneficiary, "[H]ere we had this three-hour meeting with them and tried to get them to make all the necessary changes that we needed to effect the wills and trusts and so forth; and that there was no way I, as the personal representative, could carry out the instruction I was supposed to follow in the will." *Id.* at 46. LaMarche testified further that at the end of the meeting he was left with the impression that Mr. Elliott had failed to follow through on a request to change the beneficiary of the subject annuities to LaMarche as Trustee of the Erlinda A. Polvorosa Family Trust. *Id.* at 47. The questioning then turned to subsequent communications between LaMarche and the agents. *Id.* at 48. LaMarche indicated that he had further communications with Mr. Brann, but that they concerned the servicing of his own policies. *Id.* at 49. LaMarche was then asked, "Was there anything else?" *Id.*, line 24. His initial response was that he did meet subsequently with Mr. Brann regarding his own concerns, but not about "this particular problem." *Id.* at 50, line 2. Immediately thereafter, he qualified this statement ("Oh, let's see, wait a second.") and began discussing certain aspects of negotiations among he and the beneficiaries of the Erlinda A. Polvorosa Family Trust, which discussion appears to have been non-responsive, but nevertheless changed the course of the deposition. This, in turn, led to unrelated questioning and LaMarche was never again asked whether he had described every communication with the agents.

■ Subsequently, Armesto's counsel inquired into a related topic:

Q: At any time with either Mr. Brann or Mr. Elliott, did they indicate to you that they had any degree of unfamiliarity with any of the change of beneficiary forms?

*Id.* at 119, lines 3–7. LaMarche answered this question in the negative. Sixteen days later, after having an opportunity to

read the transcript, LaMarche· certified that the transcript accurately captured his testimony on July 3, but made several corrections to his testimony. Among other changes, LaMarche changed his "no" answer to the foregoing question to "yes" and explained that he had misunderstood the question. He further explained that he was exhausted after hours of "interrogation" because a lunch break had not been taken and he is diabetic. *Id.* at 133.

Although I recognize that the discovery deadline expired on the date of LaMarche's deposition, there is no suggestion in the record that counsel for Metropolitan or Armesto pressed for further elaboration by interrogatory or otherwise before moving for summary judgment on July 31, 2002.

In response to the pending summary judgment motions, LaMarche offered the following statement in paragraph 22 of his affidavit:

> Toward the end of 1999, I met with James Brann at my office at Husson College to discuss another annuity. When I asked him again about why nothing had been done to effect our intent, Mr. Brann replied that this had been the first time either of them had dealt with a change of beneficiary form that involved a trust as beneficiary and they were not familiar with what to do with the forms.

*Docket No. 50,* ¶ 22. LaMarche relies on this averment in support of statement number 11 in what I have construed as LaMarche's statement of additional material facts, *Docket No. 49.*

Metropolitan asks that this averment be stricken from the record on the grounds that a party cannot create an issue of material fact by submitting an affidavit that contradicts prior sworn testimony and that a deposition is not a take home examination. *Docket No. 56* at 3.

"When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." *Colantuoni v. Calcagni & Sons,* 44 F.3d 1, 4–5 (1st Cir.1994). By extension, a party *may* contradict prior sworn testimony provided that a satisfactory explanation is provided. *See, e.g., Driggin v. American Security Alarm Co.,* 141 F.Supp.2d 113, 122 n. 8 (D.Me.2000).

Rule 30(e) of the Federal Rules of Civil Procedure also clearly permits a party to review his or her deposition transcript and change testimony "in form or substance," provided that a signed statement provides a reason for the change. Metropolitan has not taken issue with the justification offered by LaMarche on the signature page of his deposition transcript. Nor has Metropolitan replied to the explanation given in LaMarche's opposition to the motion to strike.

I conclude that LaMarche's corrections to his deposition testimony were permissible changes. Metropolitan has not suggested that fatigue and confusion are illegitimate bases for changing deposition testimony. Furthermore, and in light of the change made in his deposition testimony, I do not consider LaMarche's affidavit to be contradictory. LaMarche's errata sheet revealed in a timely fashion that there was an instance in which Metropolitan's agents expressed unfamiliarity with Metropolitan's change of beneficiary forms. His subsequent affidavit is consistent with his revised deposition testimony. Metropolitan's Motion to Strike is **DENIED**.

### B. LaMarche's Motion to Strike

LaMarche moves to strike, *Docket No. 48,* three paragraphs contained in the

"Moving Affidavit" of Lorna Armesto, *Docket No. 42,* on the ground that the averments found therein are irrelevant and scandalous. Although many of the averments might be relevant to the merits of the summary judgment motion, most were not included in Armesto's statement of material fact. To the extent that any averments were not offered in the statement of material fact, they have not been "offered" in evidence and have not been considered in the context of the summary judgment motion.

LaMarche also moves to strike the entire "Moving Affidavit" of Albert S. Tablante, Jr., *Docket No. 39,* on the ground that it presents impermissible testimony by counsel in violation of Maine Bar Rule 3.5(b)(1).[9] Despite its unconventional caption, this affidavit appears to be an attempt by Armesto's counsel to, among other things, co-argue the summary judgment motion presented by Armesto's local counsel. To the extent that it attempts to introduce facts for the Court to consider in connection with Armesto's summary judgment motion, such facts have not been so considered except insofar as they might be contained in Armesto's statement of material facts. *See* D. Me. Loc. R. 56(b) & (e). To the extent it seeks to offer further argument on the motion, such argument has not been considered, either. Armesto's local and New York counsel were free to collaborate in advance of the motion filing deadline and Armesto is not entitled to submit two memoranda of law in support of her motion for summary judgment.

Attorney Tablante's moving affidavit is also offered in support of Armesto's motion to amend her cross claim and her motion to strike any expert testimony offered by LaMarche on the issue of what standard of care applies to agents engaged in changing beneficiaries of a life insurance policy. Both of these motions are denied in the subsequent section of this decision, making the resolution of this motion to strike inconsequential.

In any event, I **GRANT** LaMarche's Motion to Strike Attorney Tablante's "Moving Affidavit in Support of Summary Judgment, Amendment and Renewal," *Docket No. 39,* and Lorna Armesto's "Moving Affidavit in Support of Summary Judgment," *Docket No. 42,* because Armesto failed to file an objection. A party waives any objection to a motion when she fails to object within 21 days. D. Me. Loc. R. 7(b).

### C. *Armesto's Motion to Amend and Motion to Strike*

Armesto's pending motion, *Docket No. 37,* is captioned "Motion of Third Party Defendant Lorna Armesto for Summary Judgment, to Amend its [sic] Crossclaim, and Alternatively to Strike Proffered Testimony of Expert Witnesses." The incorporated memorandum addresses only Armesto's summary judgment motion. It offers no argument whatsoever in favor of the other matters suggested by the motion's caption. Instead, Armesto's New York counsel has argued these matters by means of his "Moving Affidavit in Support of ... Amendment and Renewal," *Docket*

9. LaMarche cites Maine Bar Rule 3.5(b)(1) in support of this motion, yet Rule 3.5(b)(1) "does not apply to situations in which the lawyer would not be precluded from accepting employment under Rule 3.4(g)(1)(ii)." LaMarche offers no analysis of Rule 3.4(g)(1)(ii), which itself references subsections (b) through (f) of Rule 3.4. Suffice it to say that attorneys routinely submit affidavits in the context of pretrial litigation without placing themselves in a position that would preclude them from accepting employment under Rule 3.4(g)(1)(ii). This is not meant to suggest, however, that memoranda of law should be presented within affidavits of counsel.

*No. 39*, which I have stricken from the record. Although the striking of Attorney Tablante's moving affidavit alone justifies the denial of Armesto's motions for failure to incorporate a memorandum of law, Attorney Tablante's affidavit would not sufficiently support the motions even if it were construed as a brief in support of these two motions.

### 1. Motion to amend

■ With respect to a motion to amend filed after a deadline set in a scheduling order, a litigant must not only satisfy Rule 15(a)'s low standard, but also establish that good cause exists to amend the Court's scheduling order. *El–Hajj v. Fortis Benefits Ins. Co.*, 156 F.Supp.2d 27, 34 (D.Me. 2001). Attorney Tablante only argues that the amendment should be allowed because I granted a similar motion to amend filed by LaMarche more than five months ago. *Docket No. 39* at 9, ¶ 19. This falls short of Armesto's burden and the motion to amend is **DENIED**.

### 2. Motion to Strike

In a June 12, 2002 Order, I denied Armesto's motion to strike expert testimony as premature, explaining that I would revisit the matter at the close of discovery, at which point counsel might *better explain* "what it is that these witnesses will rely upon to support their opinions and what relationship, if any, those opinions might have to the facts of this case." *Docket No. 28* at 3. Attorney Tablante essentially argues that there is no such thing as an official standard of care governing how agents should handle change of beneficiary requests and, therefore, expert testimony on this issue is inappropriate. *Docket No. 39* at 10, ¶ 22. In the event that the Court should follow my recommendation in the companion decision and order on Metro-

politan's dispositive motions, this matter will be of no consequence. If the Court enters judgment against LaMarche's negligence and statutory claims, as I have recommended in the companion memorandum of decision involving Metropolitan's motions, the remaining claims would not generate any factual controversy that would warrant expert testimony.[10] Under the current circumstances, Armesto's motion to strike is **DENIED**.

### III. Armesto's Motion for Summary Judgment

Armesto does not move for summary judgment pursuant to Rule 56(b) *against* LaMarche's claims, but rather pursuant to Rule 56(a) *for* summary judgment in favor of her own cross-claims. *Docket No. 37, Memorandum* at 1 ("Third party defendant Lorna Armesto moves for summary judgment pursuant to FRCP Rule 56 on counts I and II of the cross claim. . . ."). Metropolitan joins in support of Armesto's motion without additional briefing. *Docket No. 34* at 1.

Armesto's motion for summary judgment presents the following questions of law:

(1) What state's substantive law applies to determine whether Armesto or LaMarche is the proper beneficiary of the subject annuities?

(2) Does the summary judgment record establish that LaMarche has a trialworthy claim to the proceeds of the subject annuities, thereby precluding the entry of summary judgment in favor of Armesto?

### 1. Choice of law

Because this Court's jurisdiction is based on diversity, Maine's choice of law rules must be applied. *Catex Vitol Gas, Inc. v. Wolfe*, 178 F.3d 572, 576 (1st Cir. 1999) (citing *Erie R.R. Co. v. Tompkins*,

---

**10.** This matter can be best addressed in the

context of a pretrial conference, if necessary.

304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). Maine law follows the Restatement on issues of conflict of laws. *See, e.g., Baybutt Constr. Corp. v. Commercial Union Ins. Co.,* 455 A.2d 914, 918 (Me. 1983) (relying on Restatement (Second) Conflict of Laws § 193 (1971) in an analogous circumstance involving rights and obligations arising under a casualty insurance contract). Pursuant to § 192 of the Restatement, in the absence of a choice of law provision in a contract and "strong countervailing considerations," the applicable law is the law of the insured's domicile. Restatement (Second) Conflict of Laws § 192 & cmt. b (1971).

Neither of the annuity contracts at issue in this case contains a choice of law provision. Thus, unless strong countervailing considerations are shown, Maine law governs because Maine was Erlinda Polvorosa's domicile. Although the substantive equitable issue argued in this motion would be an issue of first impression in Maine (which would leave LaMarche free to argue for application of the most favorable standard available), LaMarche argues that New York law should apply because Armesto and Metropolitan are domiciled in

New York and because seven of the nine named beneficiaries of the Erlinda A. Polvorosa Family Trust also reside in New York. *Plaintiff Paul H. LaMarche's Consolidated Objections and Responses,* hereinafter *"Docket No. 45,"* at 26–27.

Armesto does not object to the application of New York law in her reply brief, but she does argue that certain Law Court precedents control the disposition of this motion. However, of the four Maine cases cited by Armesto, none controls any aspect of this case.[11] Other than these cases, Armesto, like LaMarche, relies entirely on New York law. Because neither Armesto nor Metropolitan has objected to LaMarche's request for the application of New York law and because they both rely primarily on New York law, I conclude that they have consented to have it control the outcome of the pending motion for summary judgment.

2. *LaMarche has generated genuine issues of material fact that preclude the entry of summary judgment in favor of Armesto's Cross–Claims.*

Armesto's motion seeks summary judgment on her own claims; it does not seek

---

11. Both parties cite and discuss *Estate of Althenn v. Althenn,* 609 A.2d 711 (Me.1992) and *Virgin v. Marwick,* 97 Me. 578, 55 A. 520 (Me.1903). However, it is plain that neither of these cases has any precedential value in the context of this case. In *Althenn,* the Law Court reserved the question of whether a testamentary bequest can change an insurance contract's beneficiary designation, but noted that the majority of courts hold it cannot. 609 A.2d at 714 n. 7. In *Virgin,* the Law Court found that the testator therein lacked the power to change a beneficiary "by will or otherwise," but this statement was a case-specific finding that the "fund" at issue did not allow a change in beneficiary, rather than a legal pronouncement that a beneficiary of a life insurance contract can never be changed "by will or otherwise." 55 A. at 521.

Armesto also cites *Clark v. Metropolitan Life Ins. Co.,* 135 A. 357, 126 Me. 7 (1926), for the proposition that "the mere intention, or expression thereof, to change the beneficiary of a life insurance policy, by itself, is not sufficient and does not rise to the level of substantial compliance." *Docket No. 37* at 9. Although *Clark* does support this proposition, 135 A. at 359, LaMarche has presented more than just a "mere intention." Moreover, *Clark* was decided before the modern rules of civil procedure were adopted and the *Clark* Court's refusal to consider arguments of "substantial compliance" or other equitable principles was due to the fact that the suit was initiated as an action at law, rather than "on the equity side of the court." *Id.*

Finally, Armesto cites *Dolliver v. Granite State Fire Ins. Co.,* 89 A. 8, 111 Me. 275 (1913), which is discussed in the following footnote.

summary judgment against LaMarche's claims. Thus, if LaMarche can establish that any one of his several claims could entitle him to the proceeds, Armesto's motion must be denied. The parties brief only the equitable remedies.[12] In their respective memoranda of law, Armesto and LaMarche discuss two possible grounds, in equity, for the Court to award LaMarche with the proceeds of the subject annuities. Those grounds require the Court to answer the following questions:

(1) Does Polvorosa's bequest of the life insurance proceeds in her duly executed will override the contrary beneficiary designations on record with Metropolitan?

(2) Assuming that Polvorosa failed to comply with the contract provisions governing changes of beneficiaries, does the summary judgment record create a trial-worthy issue of whether LaMarche is entitled to equitable relief under New York's substantial compliance rule? [13]

---

**12.** Armesto makes only one argument regarding the law of contracts, which is that Maine law requires strict compliance where insurance contracts are concerned. For this proposition, Armesto relies on the "monumental" 1913 case of *Dolliver v. Granite State Fire Ins. Co.*, 89 A. 8, 111 Me. 275 (1913). *Docket No. 38* at 8. I note that the Law Court has never cited *Dolliver* in support of this proposition since the *Dolliver* opinion was issued, nor has it cited *Dolliver* in support of any proposition since 1926. The *Dolliver* opinion involved a conflict between an insured and an insurer regarding whether the insured's reoccupation of certain insured premises served to "revivify" a fire insurance policy that had otherwise lapsed due to a prolonged period of vacancy. 111 Me. at 275, 89 A. 8. In contrast, there is no question here concerning the availability of coverage, the only question is who of two competing beneficiaries is entitled to the proceeds. In any event, "strict compliance" is not the hallmark of Maine contract law. Rather, it is "substantial performance." *United States v. Premier Contractors, Inc.*, 283 F.Supp. 343, 348 (D.Me.1968) (citing cases); *Astor v. Boulos Co.*, 451 A.2d 903, 906 (Me. 1982) (observing that "service contracts" are governed by the rule of substantial performance). Furthermore, it is hornbook law that "[a]ny ambiguity in an insurance contract is construed strictly against the insurer and liberally in favor of the insured." *Pelkey v. GE Capital Assur. Co.*, 2002 ME 142, ¶ 10, 804 A.2d 385, 387 (internal quotation marks and citation omitted).

**13.** There are more than two hundred published state and federal opinions addressing the question of whether and when equity should govern the disposition of life insurance proceeds. The vast majority of them, consistent with New York's treatment, involve applications of the so-called "substantial compliance" equitable rule. Under this rule, a court may excuse the insured decedent's failure to comply with the contract's change of beneficiary provision, provided that there is clear evidence of his or her intent to change the beneficiary and he or she "substantially complied" with the contract provision. *See, e.g., McCarthy v. Aetna Life Ins. Co.*, 92 N.Y.2d 436, 681 N.Y.S.2d 790, 704 N.E.2d 557 (1998) (citing Delaware, New York and Pennsylvania law); *Engelman v. Connecticut General Life Ins. Co.*, 240 Conn. 287, 690 A.2d 882, 887 (1997); *Messier v. Metropolitan Life Ins. Co.*, 154 Vt. 406, 578 A.2d 98, 100 (1990); *Teague v. Pilot Life Insurance Co.*, 200 N.C. 450, 455–56, 157 S.E. 421 (1931).

The remaining courts divide into two camps. Some require strict compliance with the contract and deny equitable relief except in narrowly-delineated, special circumstances, *e.g., Sun Life Assur. Co. of Canada v. Richardson*, 299 F.3d 500, 503 (5th Cir.2002) (applying Louisiana law), while others permit a change in beneficiary based primarily on a clear showing of intent, *e.g., Lemke v. Schwarz*, 286 N.W.2d 693, 696 (Minn.1979) (holding that "where an insured has clearly and unambiguously demonstrated an intent to change the beneficiary on a life insurance policy, this intent should be given effect unless prejudice to the insurer would result").

Notably, within the "substantial compliance" majority there is an appreciable difference in the way the equitable standard is stated. In addition to evidence of a clear intent to change the beneficiary, which all courts require, some courts require proof that the contract holder performed "every act *in his power*" to comply with the contract. *Widows Fund of Sudan Temple v. Umphlett*, 246 N.C. 555, 99 S.E.2d 791, 793 (1957) (empha-

■ According to New York's highest court:

As a general rule, under ... New York law, the method prescribed by the insurance contract must be followed in order to effect a change of beneficiary. Such a rule serves the paramount goals of ensuring that life insurance proceeds are disbursed consistently with an insured's stated intent and of preventing the courts and parties from engaging in rank speculation regarding the wishes of the deceased.

Strict compliance with the rule is not always required. Instead, [t]here must be an act or acts designed for the purpose of making the change, though they may fall short of accomplishing it. The paramount factor in resolving the controversy is the intent of the insured. Mere intent, however, on the part of the insured is not enough; there must be some affirmative act or acts on [the part of the insured] to accomplish the change.

*McCarthy v. Aetna Life Ins. Co.*, 92 N.Y.2d 436, 681 N.Y.S.2d 790, 704 N.E.2d 557, 560 (1998) (internal quotation marks and citation omitted). As a matter of law, general testamentary statements in a will do not constitute sufficient "affirmative acts" to satisfy this burden. *Id.*, 681 N.Y.S.2d 790, 704 N.E.2d at 560–61.

In *McCarthy*, the insured had designated his wife as beneficiary on a life insurance policy during their marriage. *Id.* 681 N.Y.S.2d 790, 704 N.E.2d 557 at 559. The insured and his wife divorced some years later and decedent took up residence with his father, after multiple sclerosis had rendered him blind and a quadriplegic. *Id.* The insured died after having lived seven years with his father, and his holographic will, admitted to probate, bequeathed "all [his] personal belongings, stock certificates, bank accounts, insurance benefits, and any other earthly belongings to [his] father." *Id.* The policy at issue stated that the contract holder "may designate a beneficiary or change his designation of beneficiary from time to time by written request filed at the headquarters of the Policyholder[14] or at the Home Office of the Insurance Company." *Id.* After his death, the insured's ex-wife commenced an action against the insurer to claim the proceeds of the life insurance policy. *Id.* The trial court found for the ex-wife "because the decedent failed to comply with the terms of the policy." *Id.* Following affirmation by the New York Appellate Term, the Appellate Division reversed, holding that the proper inquiry was whether the evidence showed a sufficient "manifestation of intent," rather than whether

sis added); *see also Republic Nat. Life Ins. Co. v. Sackmann*, 324 F.2d 756, 758 (6th Cir. 1963) (applying Tennessee law and requiring that contract holder do "everything that he could do to make the change"). Other courts require "every *reasonable* effort." *McCarthy v. Aetna Life Ins. Co.*, 92 N.Y.2d 436, 681 N.Y.S.2d 790, 704 N.E.2d 557 (1998) (emphasis added); *See also Engelman*, 690 A.2d at 887. At least one court, the Vermont Supreme Court, requires proof of only "*a* reasonable effort." *Messier*, 578 A.2d at 100 (emphasis added) (finding substantial compliance where contract holder obtained change of beneficiary form and completed it, even though the form was not filed with the insurer). Given the absence of any binding Maine

precedent on the matter, the Law Court would be free to adopt any of the foregoing approaches, including that of either Minnesota or Vermont. The parties' joint concession that New York law applies and the fact that there are logical reasons to apply New York law avoids the necessity of trying to predict the Law Court's stand on this issue or wrestling with the issue of whether there is a certifiable question here.

14. The policy was a group life insurance policy awarded as part of an employee benefit package, which permitted notice to be given to the policyholder's employer.

sufficient affirmative acts were undertaken. *Id.* *See McCarthy,* 661 N.Y.S.2d at 629. When the Court of Appeals of New York finally addressed the matter, it reversed the decision of the Appellate Division and entered judgment for the ex-wife, finding dispositive the fact that "there is no evidence that decedent made any attempt to change the beneficiary designation during the seven years between his separation from plaintiff and his death. Nor is there any record evidence that decedent was physically or mentally incapable of attempting to substantially comply with the requirements of the policy." *McCarthy,* 681 N.Y.S.2d 790, 704 N.E.2d at 561.[15]

Because New York law requires "some affirmative act" to accomplish a change of beneficiary, *id.* 681 N.Y.S.2d 790, 704 N.E.2d at 560, *McCarthy* was a much easier case to resolve than is the instant one. The facts of *McCarthy* presented *no* affirmative act other than the writing of a holographic will. *McCarthy* does provide some guidance, nevertheless. The *McCarthy* Court cites with approval three New York Appellate Division cases in which non-compliance was excused: *New York Life Ins. Co. v. Lawson,* 134 F.Supp. 63 (D.Del.1955); *Lopez v. Mass. Mut. Life Ins. Co.,* 170 A.D.2d 583, 566 N.Y.S.2d 359 (N.Y.App.Div.1991); and *Cable v. Prudential Ins. Co.,* 89 A.D.2d 636, 453 N.Y.S.2d 86 (N.Y.App.Div.1982). In each case, the decedent had, prior to death, sent to the insurer's home office a written request for a change of beneficiary, though each request failed to comply in some manner with the contract terms. Each court gave

effect to these requests, finding that they substantially complied with the policies. *Lawson,* 134 F.Supp. at 64 (disregarding failure to complete "official" form and term requiring that policies be remitted for endorsement); *Lopez,* 170 A.D.2d at 584, 566 N.Y.S.2d 359 (disregarding policy language requiring that request be in a "satisfactory" form); *Cable,* 89 A.D.2d at 636, 453 N.Y.S.2d 86 (disregarding failure to comply with term that policy be remitted for endorsement).

Together, *McCarthy, Lawson, Lopez* and *Cable* establish that a testamentary bequest alone will not suffice, whereas submission of a signed written request will even if it fails to comply with technical requirements such as the use of a given form or the need to remit the policy for endorsement. Evidence that a written request for a change of beneficiary was submitted should, therefore, preclude summary judgment in most instances, certainly where, as here, contract language requires only written notice or written, signed notice.

Two additional Appellate Division cases are notable, though their impact is constrained to some degree by the Court of Appeal's opinion in *McCarthy.* In *Barnum v. Cohen,* 228 A.D.2d 957, 644 N.Y.S.2d 828 (N.Y.App.Div.1996), the Appellate Division affirmed a grant of summary judgment against the proponent of a beneficiary change because the change form, though duly executed, was never mailed to the insurer and remained in the decedent's possession for approximately 11 months prior to his death. *Id.* at 829.

---

**15.** The Court of Appeals specifically stated that "acts constituting substantial compliance . . . do not include *general* testamentary statements in a will." *McCarthy,* 681 N.Y.S.2d 790, 704 N.E.2d at 560 (emphasis added). *McCarthy* involved a bequest by the decedent of "all my . . . insurance benefits," *id.* 681

N.Y.S.2d 790, 704 N.E.2d at 559, which while "general" was all-encompassing. Similarly, Erlinda Polvorosa's will bequeathed to LaMarche in Trust "the remaining balance of *any* qualified retirement plan on account at Metropolitan Life Insurance Company."

The court found dispositive the fact that the decedent "did not do all that was possible to accomplish the change," having failed to mail the form in. *Id.* at 830. Similarly, in *Conn. Gen. Life Ins. Co. v. Boni*, 48 A.D.2d 621, 368 N.Y.S.2d 1 (N.Y.App.Div.1975), the Appellate Division affirmed a grant of summary judgment against the proponent of a beneficiary change where the change form, though executed in 1963, had never been delivered as late as the insured's death in 1974. *Id.* at 3. The court reasoned that the decedent did not do "all within his power to effectuate the change of beneficiary." *Id.*

*Barnum* and *Boni* reflect that mere execution of the necessary form will not constitute substantial compliance where there has been no effort, but plenty of time, to submit the form to the insurer. The troubling aspect of *Barnum* and *Boni* is that the Appellate Division, in both cases, reasoned that substantial compliance could not be found because the insureds did not do *everything* within their power to comply. In contrast, *McCarthy*, a superceding decision by New York's highest state court, describes intent as the "paramount factor," and requires only evidence of "some affirmative act or acts." 681 N.Y.S.2d 790, 704 N.E.2d at 560. Although the *McCarthy* court states that doing everything within one's power will constitute substantial compliance, it does not suggest that one *must* do everything in his or her power. *Id.* For this reason, it is perhaps best to construe *Barnum* and *Boni* as requiring that the insured communicate to the insurer what the change of beneficiary is to be. Merely filling out a form, without delivering it or otherwise communicating the insured's intent to the insurer, should have no more effect than a bequest in a will, which an insurer would likewise have no knowledge of.

Finally, New York law recognizes that policy procedures exist for the benefit and protection of the insurer. *Kane v. Union Mut. Life Ins. Co.*, 84 A.D.2d 148, 445 N.Y.S.2d 549, 552 (1981). Thus, the insurer is free to waive compliance with such procedures as it sees fit. *Shenandoah Life Ins. Co. v. Harvey*, 242 F.Supp. 680, 682–83 (D.Md.1965); *Provident Life & Accident Ins. Co. v. Dotson*, 93 F.Supp. 538, 540–41 (S.D.W.Va.1950). This fact adds another potential wrinkle to the "substantial compliance" inquiry. Substantial compliance depends not only on the steps taken by the insured to comply with the express terms of the contract, but also on any relevant conduct by the insurer that might impact upon the insured's understanding of what is required under the circumstances. *Boni*, 368 N.Y.S.2d at 3 ("[E]xact compliance with [the policy provision] will be excused 'where the attempt at such compliance has been substantial and its full success prevented by some cause not within the control of the person attempting to make the change.'").

Armesto makes three arguments to support her bid for summary judgment: (1) that provisions in Erlinda Polvorosa's will cannot serve to change the designated beneficiary of the subject annuities; (2) that Erlinda Polvorosa did not substantially comply with the subject annuities' provisions for changing beneficiaries; and (3) that Armesto's right to the proceeds of the annuity contracts already vested in her because she was the named beneficiary when the insured died.

Armesto's first argument is a non-starter. Although it is New York law that a beneficiary designation in a life insurance contract cannot be changed simply by virtue of a contrary designation in a will, *McCarthy, supra*, the existence of such a declaration is still evidence of the testa-

tor's intent, which is a relevant inquiry under the first prong of New York's "substantial compliance" test. Furthermore, LaMarche has presented other evidence in addition to the content of Erlinda Polvorosa's will.

Armesto's third argument that her rights "vested" on the date of Erlinda Polvorosa's death, begs the question presented. LaMarche's declaratory judgment and contract claims call into question whether Armesto was the beneficiary on the date of Polvorosa's death After all, a beneficiary's legal right to the proceeds of a life insurance contract vests not merely because her name is "on record" somewhere in an insurer's file, but because such a designation has never been revoked during the insured's life.

> It seems to be well settled that the right of a named beneficiary to the proceeds of a life insurance policy vests at the death of the insured only if no change in beneficiary has been made, and that the latter depends, not merely upon the records in the office of the company at the moment of the death of the insured, but also upon what steps have been taken by the insured prior to his death.

*Johnston v. Kearns,* 107 Cal.App. 557, 290 P. 640, 643 (1930). None of the cases[16] cited by Armesto suggests that an intended beneficiary's only recourse is in equity, even if the failure to change the beneficiary is due to the insurer's own administrative error, a circumstance that the summary judgment record does not rule out in this case.

Turning, finally, to the issue of whether the record can support a finding that Erlinda Polvorosa substantially complied with Metropolitan's change of beneficiary provisions, I begin by noting that, in general, summary judgment is an inappropriate tool for disposing of cases that primarily present issues of intent, *see, e.g., Leberman v. John Blair & Co.,* 880 F.2d 1555, 1560 (2d Cir.1989); *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 55 (1st Cir.2000) (stating that courts should be hesitant before basing summary judgment on the issue of intent in employment discrimination context). Furthermore, the New York cases discussed above have granted summary judgment to defendants in only relatively clear cases.

■ To overcome summary judgment, LaMarche must generate a genuine issue of fact (1) that it was Erlinda Polvorosa's intent to change her beneficiary to LaMarche as Trustee of the Erlinda A. Polvorosa Trust and (2) that she "undertook an act or acts designed for the purpose of making the change," *McCarthy,* 681 N.Y.S.2d 790, 704 N.E.2d at 560. With respect to the required showing under element 2, LaMarche is aided to the extent that he can generate a genuine issue that Erlinda Polvorosa's relative degree of non-compliance was caused by factors outside of her control. *Boni,* 368 N.Y.S.2d at 3.

LaMarche has generated a trialworthy issue on the first element simply by virtue of Erlinda Polvorosa's will, which reflects her intent to bequeath "any qualified retirement plan on account at Metropolitan" to LaMarche as Trustee of the Erlinda A. Polvorosa Family Trust. LaMarche has presented further evidence that the subject annuities were both "qualified retirement plans" and "on account" at Metropolitan. Finally, LaMarche has averred that the purpose of Polvorosa's visit with the

---

**16.** The cases Armesto relies on, *Goodale v. Wilson,* 186 A. 876, 134 Me. 358 (1936) and *Travelers' Ins. Co. v. Gebo,* 106 Vt. 155, 170 A. 917 (1934), address those circumstances in which equity may call upon a court to undo an otherwise valid change of beneficiary in order to protect the original beneficiary's reliance interest in the proceeds.

Metropolitan agents was to change the beneficiaries on the subject annuities to ensure that Polvorosa's testamentary intentions would be carried out.

LaMarche has also generated a trial-worthy issue on the second element. Viewed in the light most favorable to LaMarche, the record reflects that Polvorosa not only met with the Metropolitan agents to inform them of the changes in her will and to sign any required paperwork to make her intended changes effective, but also provided the agents with a copy of her draft will, which contained language bequeathing the proceeds of the subject annuities to the Trustee of the Erlinda A. Polvorosa Family Trust. In addition, Mr. Brann's alleged admission invites the reasonable inference that Polvorosa actually submitted beneficiary change requests to Metropolitan's agents. The fact that such requests are not on record with Metropolitan can also be explained by the alleged admission, which suggests that the agents did not know what to do with the forms. This evidence suffices to generate a genuine issue of fact under New York's "substantial compliance" test and I, accordingly, recommend that the Court **DENY** Armesto's Motion for Summary Judgment.

### Conclusion

Based on the foregoing analysis, I hereby:

**DENY** Armesto's motion to amend her cross claim;

**DENY** Armesto's motion to strike expert testimony;

**GRANT** LaMarche's motion to strike limited *portions* of Armesto's affidavit;

**GRANT** LaMarche's motion to strike Attorney Tablante's Moving Affidavit in Support of Summary Judgment, Amendment and Renewal; and

**DENY** Metropolitan's motion to strike paragraph 22 of LaMarche's Affidavit.

*So Ordered.*

I further **RECOMMEND** that the Court **DENY** Armesto's motion for summary judgment.

#### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

Nov. 6, 2002.